785 A.2d 348

Terry Louis CARTER,

v.

STATE of Maryland.

No. 141, Sept. Term, 2000.

Court of Appeals of Maryland.

Nov. 21, 2001.

Michael R. Braudes, Assistant Public Defender and Nicole M. Zell, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

Petitioner, Terry Louis Carter, appeals from his conviction in the Circuit Court for Charles County for the crimes of first degree premeditated murder, first degree felony murder, armed robbery and related handgun offenses. He complains that the trial court erred in denying his various motions for a mistrial. We agree with petitioner and shall reverse the judgments of conviction. We shall hold that, under the circumstances of this case, the prejudicial effect of improperly admitted evidence of petitioner's prior bad acts transcended the curative effect of instructions that the jury disregard that

evidence, and that petitioner is therefore entitled to a new trial.

I.

On February 7, 1996, Michael Pirner, an assistant manager at the Little Caesar's Pizza restaurant, located in Waldorf, Maryland, was shot with a .22 caliber weapon and killed. Pirner was shot in the head at close range. The restaurant safe was open, and $2,460 was missing. Petitioner, an employee of the restaurant, had been scheduled to close the restaurant with Pirner that night at 10:00 p.m.

The State's theory of the case was as follows. Petitioner had planned to rob the restaurant with the cooperation of an accomplice. When the accomplice did not show up, petitioner went through with the robbery plan himself, shooting Pirner while he counted the day's cash receipts. Petitioner disposed of the murder weapon and the cash and fled the restaurant in Pirner's car. He drove to his mother's home and told her that he had reentered the restaurant after a brief departure and that he then found Pirner's body with a bullet wound in the head. After attempting to calm him, at 11:12 p.m., petitioner's mother called 911, and police, responding to the call, found Pirner's body at the back of the restaurant just minutes later.

The State called several witnesses who testified that Petitioner had admitted his involvement in the shootings and that he had pressured them in an attempt to prevent them from testifying against him; that petitioner owned .22 caliber weapons, as well as ammunition that could have been altered to be fired from those weapons; that petitioner's statement to the police on the night of the murder, although exculpatory, was inconsistent with other known facts; and that petitioner's possession of money could not be satisfactorily explained by his restaurant salary or gifts from his parents.

The State's evidence linking petitioner to the murder weapon was circumstantial. Based on the mutilated bullet recovered from the victim, ballistics experts determined that Pirner had been killed by a single .22 caliber bullet, possibly a .22

caliber long rifle bullet that had been "clipped" or "shaved" to fit in the shorter chamber of a .22 caliber handgun. The State's evidence established that petitioner kept a .22 caliber revolver hidden in his room and carried it on his person from time to time. Petitioner had also acquired a number of .22 caliber long rifle rounds, which he had then filed or shaved down for use in the revolver.

Following the shooting, petitioner was interviewed by the police. When questioned, petitioner at first denied owning a handgun, but later admitted to owning a .38 caliber pistol. When asked what he had done with it, petitioner first told investigators that he had left it with his cousin, but when his cousin denied having the gun, petitioner claimed to have thrown it from his car window while driving somewhere in Frederick, Maryland.

During the first day of trial, Sgt. Bryant testified as to his conversation with petitioner a few hours after the murder. Sgt. Bryant said:

> Lt. Gregory entered the interview room and confronted Mr. Carter, inquiring where his .22 caliber revolver was. At first, Mr. Carter denied having a .22 caliber revolver. He then would admit subsequently he had a .38 caliber revolver that was blue with brown grips. *When confronted with the fact he had a prior arrest, he admitted the prior arrest included or was for*—

Defense counsel objected, and the court sustained the objection. At the bench, counsel moved for a mistrial. The prosecutor agreed that the highlighted testimony should not have been admitted and asked that the court strike the comment as to petitioner's prior arrest, instruct the witness not to mention it again, and give the jury a curative instruction. Defense counsel opposed the curative instruction arguing that it would simply highlight the prejudicial statement by the witness. The defense argued that there had been a pretrial agreement to stay away from petitioner's arrest record, that the prejudice was incurable, and that the only

appropriate remedy was a mistrial. Over the defense objection, the trial court instructed the jury as follows:

Officer Bryant was on the stand and he was testifying concerning conversations he had, he and other police officers had with Mr. Carter, the defendant here, early in the morning of February 8 at the police station in Waldorf, and they were talking about guns, or a gun, and Mr. Bryant said that in the conversation something was said about an *arrest* of Mr. Carter. Things stopped at that point, as you recall. . . .

I instruct you here this morning not to speculate regarding what you heard there about an *arrest.* You are not going to be told anything more about any *arrest.* You are not going to be told what the *arrest* was for, where it happened. You are not going to be told what the results were if there was a charge or whether there was a charge, because it is irrelevant to the issues in this case, and I instruct you to ignore the tidbit of information you were given concerning the fact of an *arrest.* It has absolutely no bearing on the issues before you in this trial or on the guilt or innocence of Mr. Carter of the charges before you, at this time.

The following day, James Douglas testified that petitioner told him in late 1996 that he had robbed the restaurant, but that the robbery had not gone as planned. The plan, according to Douglas, was that petitioner would leave the restaurant and a "crackhead who owed him [petitioner] money" would take Pirner to the back of the store. The plan went awry when the other person failed to show up, and petitioner shot Pirner because Pirner could identify him. Petitioner took the victim's car and went home to get rid of the gun. During the defense's cross-examination of Douglas, the following colloquy occurred:

Q. So it is your testimony you never told the police a name?

A. I said a name but I never said specifically that the name I said was him.

Q. What name did you say?

A. I said, Benny.

Q. Who is Benny?

A. Some crackhead he sold crack to.

Defense counsel again moved for a mistrial, arguing that evidence before the jury of two unrelated crimes was unduly prejudicial to the defendant. The trial judge agreed that the witness's testimony was unresponsive, but denied the motion for a mistrial. Over petitioner's objection, the trial judge instructed the jury as follows:

> Ladies and gentlemen, you heard me caution the witness here about volunteering information, and the question regarding who is Benny provoked an answer that in the witness's mind may have been responsive, but in the mind of counsel and myself didn't necessarily require the response that was given. The response given characterized Benny as a crackhead, *as somebody the defendant had sold crack to before.* I instruct you at this point to disregard that characterization of Benny as *someone to whom the defendant has sold crack to before.* The defendant is not on trial here today for *selling crack.* There is no evidence the defendant has ever been charged with or convicted of selling crack, and there is no suggestion that someone who would be capable of that would necessarily be capable of the kind of crime that has been charged here, even if you had been told he had done it or were supposed to be told. So I instruct you again to disregard that comment from the witness by way of identifying Benny. It is absolutely immaterial, irrelevant, not connected to the subject matters of the case before you.

Another friend of petitioner's, Richard Atkins, testified, on behalf of the State, that petitioner had admitted killing somebody and described the victim's death in detail. During closing argument, the State recounted the testimony of Atkins, attributing the incriminating statement to petitioner. The prosecutor argued: "Somebody said something to Terry. He said, you don't know who I am. I shot somebody." Defense

counsel objected on the ground that the argument assumed facts not in evidence, that it was highly prejudicial, and moved for a mistrial for the third time. The court denied the motion. At the end of the State's case, defense counsel renewed his motion for a mistrial, arguing cumulative prejudice as a result of these three incidents. The motion was denied.

The jury found petitioner guilty of first degree premeditated murder, first degree felony murder, armed robbery, and related handgun offenses. The judgments were affirmed by the Court of Special Appeals in an unreported opinion. This Court granted Carter's petition for writ of certiorari to answer two questions: whether the trial court erred in propounding curative instructions over the defense objections and whether the trial court erred in denying petitioner's motions for a mistrial. *See Carter v. State,* 363 Md. 205, 768 A.2d 54 (2001).

## II. Curative Instructions

We turn first to petitioner's argument that, when a prejudicial event occurs during a criminal trial through no fault of the defendant, the defense should have an absolute right to refuse a curative instruction that carries the potential for highlighting the prejudicial information. Petitioner suggests that reason and precedent compel the conclusion that a trial judge errs in propounding such an instruction over defense objection. Petitioner maintains that, although the trial judge propounded curative instructions at each juncture, the instructions did nothing to diminish the prejudice to petitioner and, in fact, only exacerbated the harm. Petitioner concludes that trial counsel's opposition to any curative instruction clearly waives the defendant's right to argue on appeal, or on post-conviction, that such an instruction should have been given. *But see Terry v. State,* 332 Md. 329, 333–334, 631 A.2d 424, 426 (1993) (holding that where the evidence is inadmissible and a curative instruction would not have rendered the error harmless, the defendant did not waive right to raise issue of other crimes evidence by rejecting the judge's offer for a limiting instruction).

In this case, the State does not argue that the complained of evidence was admissible. Instead, the State argues that the decision whether to give a curative instruction to a jury lies within the sound discretion of the trial judge. This is so, the State argues, because a curative instruction is given not merely to benefit the defense, but also to avoid the remedy of a mistrial.

The evidence objected to in the case *sub judice* was inadmissible other crimes evidence. Maryland Rule 5–404(b) and the common law preclude the admission of other crimes evidence, unless the evidence fits within a narrowly circumscribed exception. *See Merzbacher v. State,* 346 Md. 391, 406, 697 A.2d 432, 440 (1997) (noting that the common law rule of "other crimes evidence" is embodied in Rule 5–404(b)). Evidence of prior criminal acts is not admissible to prove the guilt of the defendant. *See Streater v. State,* 352 Md. 800, 807, 724 A.2d 111, 114 (1999) (noting that substantive and procedural protections are necessary to guard against potential misuse of other crimes or bad acts evidence and to avoid the risk that the evidence will be used improperly against a defendant); *Terry,* 332 Md. at 334, 631 A.2d at 426 (explaining that evidence of prior criminal acts is inadmissible because it may tend to confuse jurors, predispose them to a belief in the defendant's guilt, or prejudice their minds against the defendant).

Maryland Rule 4–325(a) addresses jury instructions in criminal cases. The rule provides as follows:

The court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate. In its discretion the court may also give opening and interim instructions.

With respect to the law to be applied in the case, when requested, it is the duty of the trial judge to instruct on the essential elements of the crime charged, any defenses supported by the evidence, and the burden of proof and presumption of innocence. *See Patterson v. State,* 356 Md. 677, 683–

84, 741 A.2d 1119, 1122 (1999) (stating that the defendant is entitled to instructions on the law when generated by the evidence); *Binnie v. State,* 321 Md. 572, 582–83, 583 A.2d 1037, 1042 (1991) (stating that the trial judge must give instructions that are fairly supported by the evidence); *Sims v. State,* 319 Md. 540, 550, 573 A.2d 1317, 1321 (1990) (holding that a defendant is entitled to a jury instruction on any theory of defense that is fairly supported by the evidence, even if several theories are inconsistent); *Hardison v. State,* 226 Md. 53, 60–61, 172 A.2d 407, 411 (1961) (holding that, on request, it is incumbent upon the court to give an advisory instruction on every point of law essential to the crime charged and supported by the evidence).

■ As a general rule, judges are accorded broad discretion in determining whether a particular instruction should be given on a particular occasion, although statutes, court rules, and case law may place limits on the judge's discretion. *See, e.g., Ware v. State,* 348 Md. 19, 59–60, 702 A.2d 699, 718–719 (1997) (holding that a defendant is not entitled to a requested instruction where the instruction conflicts with the mandate of Art. 27, § 413(i)); *Gunning v. State,* 347 Md. 332, 348, 701 A.2d 374, 382 (1997) (holding that the giving of an identification instruction is within the sound discretion of the trial judge); *Dean v. State,* 325 Md. 230, 600 A.2d 409 (1992); *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986) (holding that the trial judge has discretion generally in determining the propriety of a specific jury instruction).

In *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), the Supreme Court was presented with the question whether a cautionary instruction, given over defense counsel's objection, was a violation of the federal constitutional privilege against compulsory self-incrimination. On trial for escape, Lakeside exercised his constitutional privilege and declined to testify in his own defense. Over Lakeside's objection, the trial judge gave a "no-adverse-inference" instruction—a cautionary instruction that the jury draw no adverse inference from the accused's failure to testify. *Cf. Carter v. Kentucky,* 450 U.S. 288, 300, 101 S.Ct. 1112, 1119, 67

L.Ed.2d 241 (1981) (holding that trial court is required to give a "no-adverse-inference" instruction during guilt phase when requested by defendant). The trial court included the instruction because it "felt that it was necessary to give that instruction in order to properly protect the defendant." *Lakeside,* 435 U.S. at 335, 98 S.Ct. at 1093, 55 L.Ed.2d 319.

Relying upon the Court's decision in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), Lakeside argued that the trial court, by giving such an instruction over his objection, violated *Griffin's* proscription against commenting on a defendant's exercise of his right to remain silent. The Court found, however, that *Griffin* was concerned only with an adverse comment on a defendant's silence. Noting that "[i]t would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect," *Lakeside,* 435 U.S. at 339, 98 S.Ct. at 1095, 55 L.Ed.2d 319, the Court held that a no inference instruction given over a defendant's objection did not violate the privilege against compulsory self-incrimination. *See id.* at 340–41, 98 S.Ct. at 1095, 55 L.Ed.2d 319. In doing so, however, the Court observed that "[i]t may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection. And each State is, of course, free to forbid its trial judges from doing so as a matter of state law." *Id.* at 340, 98 S.Ct. at 1095, 55 L.Ed.2d 319.

*Hardaway v. State,* 317 Md. 160, 562 A.2d 1234 (1989), followed shortly thereafter. In *Hardaway,* defense counsel asked the trial judge not to instruct the jury that the defendant had a constitutional right not to testify and that no adverse inference should be drawn from his failure to testify. Despite the defendant's opposition, the trial judge delivered the instruction to the jury. On appeal, Hardaway argued that a no adverse inference instruction inadvertently may harm a defendant by calling attention to his election not to testify, that defense counsel was better able than the trial judge to determine whether such an instruction would be harmful or helpful, and that giving the instruction over defendant's objection was error.

**586**

Taking note of a split in authority across the country, we agreed with Hardaway, finding it "clear that the purpose of the cautionary instruction is to protect the defendant in the exercise of his constitutional privilege against self-incrimination." *Id.* at 166, 562 A.2d at 1237. We reversed the judgment, stating that "[a]s the cautionary instruction is a right of the defendant, for the purpose of protecting the defendant, it should, like other rights, be waivable by the defendant." *Id.* at 166–67, 562 A.2d at 1237. We held that, "[s]ince the instruction is a right of the defendant, for his benefit, but because the beneficial effect of the instruction may be uncertain in some circumstances, it follows that the decision whether the instruction is given should lie with the defendant." *Id.* at 167, 562 A.2d at 1237.

The present case is distinguishable from *Hardaway*. In *Hardaway*, we made clear that the purpose of the cautionary instruction regarding the defendant's failure to testify was "to protect the defendant in the exercise of his *constitutional* privilege against self-incrimination." *Id.* at 166, 562 A.2d at 1237 (emphasis added). Likewise, we concluded that "the entitlement to have the jury instructed that no adverse inference should be drawn from the defendant's silence is itself *a constitutional right belonging to the defendant.*" *Id.* (citations omitted) (emphasis added). Because the no adverse inference instruction, in the context of the defendant's right against self-incrimination, is itself a "right of the defendant, for his benefit," *id.* at 167, 562 A.2d at 1237, the decision of whether to give the instruction rests with the defendant. In essence, the defendant's right to refuse an instruction regarding his failure to testify is a counterpart to the right to receive such an instruction if the defendant so chooses. *Cf. Carter*, 450 U.S. at 300, 101 S.Ct. at 1119, 67 L.Ed.2d 241. As such, the right is one that the defendant may waive. As to the applicability of *Hardaway*, there is a disagreement among the judges of the Court as to whether the reasoning of that case applies to the issue presented herein. While otherwise agreeing with the opinion, Chief Judge Bell, Judge Eldridge, and Judge Cathell would hold that the trial court erred in propounding

curative instructions over the defense objections. They believe that the rationale of *Hardaway* is applicable to the cautionary instruction in this case and that Court's reliance on the constitutional underpinning of *Hardaway* is a distinction without a difference.

In contrast, a defendant's right not to have evidence of prior bad acts admitted in evidence is derived from statute, evidentiary rules, and the common law. Unlike the situation in *Hardaway,* a defendant does not have an absolute right to a curative instruction regarding the inappropriate admission of prejudicial evidence. Correspondingly, a defendant does not have an absolute right to waive, reject, or veto the court's decision to give such an instruction.

We do not accept petitioner's argument that a curative jury instruction is solely for the benefit of the defendant. A curative instruction is not always for the sole benefit of the defendant. The public has an interest in the conduct of "fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Jury instructions guide deliberations of the jury and benefit the State and the public. *See Chambers v. State,* 337 Md. 44, 48, 650 A.2d 727, 729 (1994) (noting that "the main purpose of a jury instruction is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict").

The instruction given in the instant case was intended to guide the jury in its receipt of the evidence and to eliminate any confusion that irrelevant and prejudicial evidence might have caused in the minds of the jury. We are not dealing here with the waiver of a constitutional protection, but rather with the exercise of the trial court's duty to all participants in the criminal justice system—the defendant, the State, and the jury. *See* AMERICAN BAR ASS'N, ABA STANDARDS FOR CRIMINAL JUSTICE SPECIAL FUNCTIONS OF THE TRIAL JUDGE 6.26(b) (3d ed. 2000) ("The trial judge should conduct the trial in such away as to enhance the jury's ability to understand the proceedings and to perform its facts finding function."). Accordingly, we

hold that when the court finds that inadmissible evidence has been presented to the jury, it is within the discretion of the trial court to decide whether a cautionary or limiting instruction should be given.

The Supreme Court of Pennsylvania has similarly held that the giving of a cautionary instruction is within the sound discretion of the trial court. In the case of *Commonwealth v. Moore*, 534 Pa. 527, 633 A.2d 1119 (1994), the trial court gave a cautionary instruction, over defense objection, regarding the appearance of the defendant and any publicity surrounding his appearance. *Id.* at 540–42, 633 A.2d at 1126. The defendant had appeared in the courtroom before the jury with swollen eyes, a bandaged head, and a bruised lip. *Id.* The Supreme Court of Pennsylvania rejected the defendant's argument that the giving of a cautionary instruction over the defense objection was error and held that the trial court must take whatever action it deems appropriate under the circumstances. *Id.* at 542–44, 633 A.2d at 1127. The court said "it is a matter within the sound discretion of the trial court to determine whether this cautionary instruction was necessary in light of the publicity surrounding the prison riot coupled with appellant's appearance at trial." *Id.*

### III. Mistrial

We turn now to consider whether the trial judge abused his discretion in denying the several motions for mistrial. The State argues that the curative instructions given by the court on the three separate occasions cured any prejudice, and that the trial judge properly exercised his discretion in denying each of the mistrial motions at issue. The State maintains that there were two isolated remarks and a comment in closing argument; that one of the remarks was elicited by defense counsel (although the trial judge ruled to the contrary); that this was not a case that rested upon the testimony of a single witness; and that there existed a great deal of other evidence to establish petitioner's guilt.

It is well-settled that a decision to grant a mistrial lies within the sound discretion of the trial judge and that the trial judge's determination will not be disturbed on appeal unless there is abuse of discretion. *See Klauenberg v. State,* 355 Md. 528, 555, 735 A.2d 1061, 1075 (1999); *State v. Hawkins,* 326 Md. 270, 277, 604 A.2d 489, 493 (1992); *Hunt v. State,* 321 Md. 387, 422, 583 A.2d 218, 235 (1990). We have held consistently to the principle that "[t]he grant of a mistrial is considered an extraordinary remedy and should be granted only 'if necessary to serve the ends of justice.' " *Klauenberg,* 355 Md. at 555, 735 A.2d at 1075 (citations omitted). The question, as we have often said, is one of prejudice to the defendant. *See, e.g., Rainville v. State,* 328 Md. 398, 408, 614 A.2d 949, 953 (1992). The trial judge must assess the prejudicial impact of the inadmissible evidence and assess whether the prejudice can be cured. If not, a mistrial must be granted. If a curative instruction is given, the instruction must be timely, accurate, and effective.

The trial judge in the instant case recognized the "general policy that mistrials are to be avoided in the absence of manifest necessity" and determined that, under the circumstances, declaration of a mistrial was not manifestly necessary, as the inadmissible and prejudicial evidence could be remedied by the lesser alternative of curative instructions to the jury. We must decide whether "the damage in the form of prejudice to the defendant transcended the curative effect of the instruction." *Rainville,* 328 Md. at 408, 614 A.2d at 953–54 (quoting *Kosmas v. State,* 316 Md. 587, 594, 560 A.2d 1137, 1141 (1989)).

In *Kosmas,* we considered whether the trial court abused its discretion in failing to grant a mistrial when the State's witness had told the jury that the defendant refused to take a polygraph examination. The trial judge told the jury to disregard the testimony. Reversing the judgment, we said:

"The questions we must consider, then, deal with the damage likely to have been caused by the inadmissible evidence, and the efficacy of the trial judge's prompt instruction to disregard that evidence. Because we conclude that the

damage in the form of prejudice to the defendant transcended the curative effect of the instruction, we reverse...."
*Kosmas*, 316 Md. at 594, 560 A.2d. at 1141.

▇  In *Rainville*, we considered whether the trial judge erred in not granting a mistrial. Judge McAuliffe, writing for the Court, observed that the factors that this Court had applied in the polygraph cases in deciding whether a mistrial should have been granted were "equally applicable for purposes of deciding whether an accused's right to a fair trial was adequately protected by a jury instruction following a different kind of inadmissible and prejudicial testimony." *Rainville*, 328 Md. at 408, 614 A.2d at 954. Those factors are:

> "whether the reference to [the inadmissible evidence] was repeated or whether it was a single, isolated statement; whether the reference was solicited by counsel, or was an inadvertent and unresponsive statement; whether the witness making the reference is the principal witness upon whom the entire prosecution depends; whether credibility is a crucial issue; [and] whether a great deal of other evidence exists...."

*Id.* (quoting *Guesfeird v. State*, 300 Md. 653, 659, 480 A.2d 800, 803 (1984)).

In the case before us, we note that the reference to other crimes evidence, although unsolicited by the prosecutor, was not an isolated incident. Sgt. Bryant, a veteran investigator and the lead officer in the case, had been instructed by the State not to mention petitioner's previous weapons charge. The trial court recognized that the jury would conclude that petitioner had been charged previously with a weapon offense. The court said:

> "Any logical consideration of that discussion would lead to the inevitable conclusion among the [prior] charges at least was a gun charge. So it is sort of inescapable, isn't it, that the jury now knows this accused has previously been arrested on a gun charge."

The second incident was the result of a nonresponsive answer propounded by defense counsel on cross-examination.

The State's witness volunteered that petitioner had sold drugs to a "crackhead." The final incident arose during closing argument when the prosecutor referred to prejudicial facts that were not in evidence. Credibility was an important issue in the case inasmuch as petitioner had denied involvement in the crime, and the State's witnesses recounting petitioner's inculpatory remarks had motives for testifying against him.

We have addressed repeatedly the prejudice that results from "other crimes" evidence. In *Streater v. State,* 352 Md. 800, 724 A.2d 111 (1999), we noted:

> "Prejudice may result from a jury's inclination to convict the defendant, not because it has found the defendant guilty of the charged crime beyond a reasonable doubt, but because of the defendant's unsavory character or criminal disposition as illustrated by the other crimes evidence. . . . The rule therefore acknowledges the risk presented by a jury's tendency to improperly infer from past criminal conduct that the defendant committed the crime for which the defendant is currently charged."

*Id.* at 810, 724 A.2d. at 116 (citations omitted).

In instructing the jury to disregard the testimony about a prior arrest, the court mentioned the arrest four times. The instruction as given, rather than being curative, highlighted the inadmissible evidence and emphasized to the jury that petitioner had been arrested previously. The purported curative instruction was inadequate to cure the prejudice.

While the mere occurrence of improper remarks does not by itself require a mistrial, in this case, considering the cumulative effect of the inadmissible evidence and the curative instructions actually given, we conclude that prejudicial error occurred, and the trial judge abused his discretion in not granting a mistrial. The error was not harmless beyond a reasonable doubt. *See Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

■ Although generally cautionary instructions are deemed to cure most errors, and jurors are presumed to follow the court's instructions, *see Veney v. State,* 251 Md. 182, 246 A.2d 568 (1968), in this case, the instruction highlighted the inadmissible evidence rather than curing it. *See* 5 LYNN McLAIN, MARYLAND EVIDENCE § 103:10 (2d ed.2001) (noting that an instruction to disregard evidence may emphasize it). We are unwilling to presume that the jury followed the court's instructions. As the Supreme Court said in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968):

> It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, ... there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.

*Id.* at 135, 88 S.Ct. at 1627, 20 L.Ed.2d 476.

This is just such a case. A new trial is warranted.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS OF CONVICTION IN THE CIRCUIT COURT FOR CHARLES COUNTY AND TO REMAND THIS CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY CHARLES COUNTY.*

Dissenting Opinion by HARRELL, J., in which WILNER and BATTAGLIA, JJ. join.

Although I agree with the Majority's analysis and conclusion regarding Carter's flagship argument questioning whether, under the circumstances of this case, the trial judge possessed the power to give curative instructions over the defendant's objection (Maj. op., Part II, at 582–88), I part company with its conclusion that a mistrial should have been granted (Maj. op., Part III, at 588–92). Although hardly a model, the trial judge's choice of curative language was not so

ineffective as to fail to ameliorate the prejudice to Carter in this trial or to erode my confidence in the jury's ability to follow the judge's directions. Therefore, I would affirm the Court of Special Appeals's judgment.

It is unclear to me whether the Majority justifies reversal based solely on its analysis of the trial judge's instructional response to Sgt. Bryant's isolated, unresponsive remark made during direct examination by the prosecutor (near the end of the first day of a five day trial) concerning a prior arrest of Carter (Maj. op. at 590), or whether the Majority relies also on a pejorative view of the judge's curative direction delivered on the third day of trial immediately following the unresponsive reply of State's witness, James Douglas, during cross-examination by Carter's counsel, to the effect that Carter sold crack to his alleged co-conspirator, Benny (Maj. op. at 590–91).[1] This uncertainty is fueled by the Majority, in its analysis and application of the relevant legal principles, appearing to scrutinize only the curative instruction aimed at Sgt. Bryant's remark:

> In instructing the jury to disregard the testimony about a prior arrest, the court mentioned the arrest four times in the course of telling the jury to disregard it. The instruction as given, rather than being curative, highlighted the inadmissible evidence and emphasized to the jury that petitioner had been arrested previously. The purported curative instruction was inadequate to cure the prejudice.

(Maj. op. at 591).

Even assuming the Majority intended to sweep-up both curative instructions in its proclamation of error, I would not

---

1. It seems clear that the trial judge's third curative instruction, given in response to the prosecutor's errant remark in closing argument (Maj. op. at 581–82), does not figure in the Majority's reasoning because it is not mentioned in the Majority's analysis of the mistrial issue, other than in a passing reference in the opening paragraph of this portion of the Majority opinion (Maj. op. at 588).

agree that the cumulative effect of the debatable linguistic shortcomings in the instructions merit the designation reversible error. Carter may not have received a perfect trial, but he got a fair one. I imagine the judge's instruction in response to Sgt. Bryant's gaffe would not be a candidate for inclusion in future editions of *Maryland Criminal Pattern Jury Instructions* (owing to its arguably unnecessary repetition of the word "arrest"); however, the Majority fails to persuade me, on this record, why the instruction was not able to be followed by the jury. Further, the instruction intended to cure Douglas's allusion to Carter selling crack (somewhat less repetitive regarding crack-selling than was its "arresting" cousin) seems to me to be likely of comprehension and observance by a reasonable jury as well.

The two relevant evidentiary missteps occurred on the first and third days of the five day trial and were dealt with promptly. The errant remarks necessitating the instructions were uttered by different State's witnesses, neither of whom was pivotal. The first remark occurred during the State's direct examination (for which the trial judge found no fault attributable to the prosecutor) of Sgt. Bryant, one of several officers who investigated the crimes. The second inadmissible statement occurred during Carter's counsel's cross-examination of James Douglas, Carter's friend. Although the trial court found Douglas's answers to be unresponsive to defense counsel's question,[2] defense counsel arguably should have anticipated the content of the response because a similar statement was contained in Douglas's pre-trial written statement given to police, a copy of which defense counsel clutched in his hand as he interrogated Douglas. Douglas was but one of several of Carter's friends and co-workers who testified to various incriminating facts implicating Carter in the crimes (many involving claims or boasts Carter made to them).

As the State points out in its Brief to the Court:

---

2. Defense counsel, in a course of questioning implicitly aimed at exploring Benny's supposed relationship to Carter, asked the open-ended question: "Who is Benny?" The response he got was: "Some crackhead he [Carter] sold crack to."

This was not a case that rested upon the testimony of a single witness. Numerous witnesses, several of them friends of Carter himself, provided evidence that, taken as a whole, established truly compelling evidence of guilt.... This evidence included Carter's own admissions to not one, but several, friends that he committed the robbery and murder; the compelling circumstantial evidence regarding his conduct at the time of the crime; his abortive attempt to intimidate a witness as evidenced by the incriminating note found in his jail cell; and his sudden, unexplained wealth after the robbery. In addition, there was abundant evidence from several sources establishing that Carter possessed handguns and that he had shaved long rifle ammunition of the type used in the crime.

(State's Brief at 27).

The prejudice to Carter, against which the palliative effect of the curative instructions is to be measured, seems to me to be of less "devastating and pervasive effect," (*Rainville v. State*, 328 Md. 398, 411, 614 A.2d 949, 955 (1992)), than that found by the Court in the circumstances of the main cases relied on by the Majority: *Rainville, Kosmas v. State*, 316 Md. 587, 560 A.2d 1137 (1989), and *Guesfeird v. State*, 300 Md. 653, 480 A.2d 800 (1984). In *Rainville*, the defendant was on trial for allegedly raping and otherwise sexually abusing a 7 year old girl. *Rainville*, 328 Md. at 399, 614 A.2d at 949. A State witness, the child's mother, testified that the defendant, several weeks after the assault on the victim, was "in jail for what he had done to [the victim's 9 year old brother]." *Id.* (alteration in original). In fact, Rainville also had been arrested for child abuse and a sexual offense against the victim's brother. *Rainville*, 328 Md. at 400, 614 A.2d at 950. Based on this, and even though a prompt curative instruction was given by the trial court, the Court was persuaded that the prejudice to Rainville was irremediable. *Rainville*, 328 Md. at 411, 614 A.2d at 955. The Court suggested that one of the considerations that tipped the scales in reaching this conclusion was that "[t]he State's case rested almost entirely upon the testimony of a seven-year-old girl." *Rainville*, 328 Md. at

409, 614 A.2d at 954. In Carter's case, however, the inadmissible other crimes/bad acts evidence was not substantially similar, in large measure, to the flagship charges for which he was being tried (first degree premeditated murder and armed robbery). Moreover, as noted *supra* (Dissent, op. at 595), the body of incriminating evidence against Carter did not rest on any single, pivotal witness.

Both *Kosmas* and *Guesfeird* involved prejudice worked by testimonial references to polygraph testing (in the case of *Kosmas*, a reference to the refusal to take a polygraph test) (*Kosmas*, 316 Md. at 594, 560 A.2d at 1141). In *Guesfeird*, the defendant was charged with child abuse and a sex crime against a teenage girl. *Guesfeird*, 300 Md. at 655–56, 480 A.2d at 801. During the victim's testimony, she referred in passing to having taken a lie detector test. *Guesfeird*, 300 Md. at 656, 480 A.2d at 802. As the "sole prosecution witness on which the alleged crimes were based," the victim's "credibility was the crucial issue for the jury," according to the Court. *Guesfeird*, 300 Md. at 666, 480 A.2d at 807. In comparison, the substance of her testimony as to the crimes was contradicted by the testimony of Guesfeird and his witnesses, many of whom were the victim's own family members. *Guesfeird*, 300 Md. at 657–58, 480 A.2d at 803. Thus, because she was, in effect, the State's case and her reference to having taken a lie detector test could support a reasonable inference that she was testifying because she passed the test, the Court concluded the prejudice to Guesfeird could not be cured effectively by the timely curative admonition delivered by the trial judge. *Guesfeird*, 300 Md. at 666–67, 480 A.2d at 807. In Carter's case, as noted *supra* (Dissent, op. at 596), there was no single pivotal witness in the State's prosecution. Rather, the mass of the testimony of the State's multiple witnesses and other evidence was compelling. Comparing the relative strength of the State's case in *Guesfeird* to that in Carter's trial, I am unable to conclude that the prejudice in the latter was unable to be mitigated acceptably by the timely instructions given.

Finally, although I am not able "to examine virtually the entire transcript of the trial" in *Kosmas*, as the author of the Court's opinion in *Kosmas* did (316 Md. at 598, 560 A.2d at 1143) in concluding that the prejudice to Kosmas's credibility occasioned by a witness's assertion that he overheard Kosmas refuse a police request to take a lie detector test was such that no instruction could cure it (*See id.*), I am persuaded, beyond a reasonable doubt, that the outcome of Carter's trial was not dependent on the pertinent inadmissible evidence, given the curative instructions.

Judges Wilner and Battaglia authorize me to state that they join with this Dissent.