854 A.2d 1259

Nathaniel KOSH

v.

**STATE of Maryland.**

**No. 121, Sept. Term, 2003.**

Court of Appeals of Maryland.

July 28, 2004.

Amy E. Brennan, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Michelle W. Cole, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Respondent.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE, JJ.

HARRELL, Judge.

During the trial for alleged controlled dangerous substance (CDS) violations, the prosecutor asked a police officer if the defendant, Petitioner Nathaniel Kosh, after arrest, but prior to being given *Miranda*[1] advisements, denied his involvement in the underlying drug sales. The defense objected, and a bench conference ensued during which the officer told the judge, outside the jury's hearing, that he could not remember whether Kosh denied his involvement. After the bench conference, the trial judge, in open court, sustained the objection, but told the jury:

> "I'm basically telling you what the police officer said. Number one, he didn't give any *Miranda* warnings and two, Mr. Kosh didn't say anything about his involvement in the case or not his involvement in the case because he wasn't asked. Okay. So there is no more information on that score. He wasn't asked whether he was involved and he didn't respond."

Post-arrest silence is inadmissible as substantive evidence of a criminal defendant's guilt, regardless of whether that silence precedes the recitation to the defendant of *Miranda* advisements. In the present case, the trial judge erred by telling the jury that Kosh remained silent regarding his involvement, both because the judge's instruction was not supported by the officer's testimony and because post-arrest silence is inadmissible. The judge's instruction probably led the jury to believe that Kosh had not denied his involvement, and effectively impeached in advance the testimony of three defense witnesses who testified that Kosh actually denied his involvement. We conclude that the judge abused his discretion by failing to correct the jury's misapprehension of the testimony and by denying the subsequent defense motion for a mistrial. We reverse the convictions and remand for a new trial.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## I.

On the evening of 4 June 2001, Detective David Jones covertly observed two apparent drug deals from his vantage point on the 1400 block of Pennsylvania Avenue in Baltimore City. Detective Jones testified that he observed a series of interactions between Kosh and a fifteen-year-old juvenile, later identified as Donnell K., who were loitering in the area and engaging in periodic conversations with one another. Two women separately approached the scene and interacted with Kosh and/or Donnell K. These interactions involved, according to Jones, either Kosh or Donnell K. giving items to the women in return for cash.

Detective Jones directed a police team to arrest each woman after she left the area. The first woman was identified as Glenda Watkins; the second as Sharon Miller. Each woman was found to be carrying several vials containing cocaine. Jones then directed the team to arrest Kosh and Donnell K. During the search incident to his arrest, police found $291 in cash on Kosh, but no drugs. Police found forty-five vials of cocaine and $13 in cash on Donnell K.

Kosh was tried in the Circuit Court for Baltimore City on various CDS charges. At trial, Detective Jones, an eighteen-year veteran of the Baltimore City Police Department, was qualified as an expert in "the observation, packaging and street-level distribution of drugs." He testified that, in his experience, two dealers frequently work together:

> "[Y]ou would have one person . . . acting as the money person and this person will collect the currency from the suspected drug buyers while the other individual . . . will actually have the narcotic or the stash . . . on their person or stored somewhere, on the ground, maybe in a mail box, and that person will actually distribute the drugs to the suspected buyers.

> * * *

> "The benefit from that is that you don't lose all your proceeds, so if you have a one-person scenario where you

have the dealer with the money and the drugs and if an officer should happen to come in and make an arrest, they have their stash as well as the currency and then you lose all your profit but in a two-person scenario you try to break it up where you don't lose your stash as well as your currency. So that's the benefit of having a two-person or more scenario."

Jones also testified that juveniles are often included in these drug dealing teams because the penalties for juveniles caught with narcotics are less harsh than those for adults. When an adult and a juvenile work together, he said, the adult typically oversees the operation and collects the cash, while the juvenile holds the narcotics.

During redirect examination on the second day of trial, Detective Jones was asked if he saw the male suspects again after they were arrested. He responded that he saw them at the Central District Drug Enforcement Unit Office prior to their transfer to the Central Booking Office. Jones testified that he had not given *Miranda* advisements to any of the suspects, and that he was not aware whether they had been given *Miranda* advisements by anyone else.[2] The following exchanges then occurred:

> [Prosecutor]: Do you recall if the Defendant ever denied his being involved in this case?
>
> [Defense counsel]: Jesus, Your Honor.
>
> [The Court]: Wait, wait, wait, wait.
>
> [Defense counsel]: Objection, Your Honor. May counsel approach?
>
> [The Court]: Members of the jury, you are to disregard the last question. There are some rules involved, disregard the question. Counsel, come on up.
>
> (Counsel approached the bench and the following ensued:)

---

2. There is no indication that *Kosh* had been made aware of his *Miranda* rights prior to the Central District Drug Enforcement Unit Office meeting about which Detective Jones was asked to testify. We, therefore, assume for the purposes of this appeal that he was not made aware of his *Miranda* rights before then.

[Defense counsel]: Your Honor, I move for a mistrial.

[The Court]: No, no, I understand. You need to, do you know what the witness is going to say? Did he talk to him?

[Prosecutor]: I believe, I don't know what he's going to say, no.

[The Court]: You can't ask a question like that. Did you deny your involvement? He would have to have been advised about his *Miranda* rights and have had to sign a *Miranda* form. In any event, so you have to have a preamble of all those questions before, which you didn't have. Do you know what he's going to testify to?

[Prosecutor]: I don't believe the Defendant—I'm not going to say—I don't know what he's going to [testify] to.

[The Court]: Officer, come on up for just a minute. Did the Defendant say anything to you about if you were asked that question about the facts of this case?

[Detective Jones]: Did he ask me?

[The Court]: Did he deny or—

[Detective Jones]: He may have. I just don't recall what he said.

[The Court]: You don't recall anything. I'm sorry, and you didn't give him a *Miranda* warning or—

[Detective Jones]: No, sir I did not give him a *Miranda* warning.

[The Court]: All right. Okay.

[ (Detective Jones returned to his seat.) ]

\* \* \*

[Defense counsel]: At this time, Your Honor, I move for a mistrial. The State has now brought into this case possible testimony in violation of the Fifth Amendment to the Constitution—

[The Court]: I'm going to clarify right now.

[Defense counsel]: All right. Just for the record, Your Honor, and I'll certainly shut up after—

[The Court]: I'll protect your client.

[Defense counsel]: I understand, but I just want to make the motion.

[The Court]: Why don't you make the objection after I—

[Defense counsel]: Very well.

(Counsel returned to the trial tables and the following ensued:)

[The Court]: Now, members of the jury, everyone who is charged with a crime, including the Defendant in this case, has constitutional rights so that if the person is asked any questions, the person first has to be advised of his rights, it's called a *Miranda*—given certain warnings that anything you might say could be used against you. Now, we wanted to make certain that if there had been any statement by Mr. Kosh, at all, that he had been given the *Miranda* warnings and when I asked the police officer up here I'm basically telling you what the police officer said. Number one, he didn't give any *Miranda* warnings and two, Mr. Kosh didn't say anything about his involvement in the case or not his involvement in the case because he wasn't asked. Okay. So there is no more information on that score. He wasn't asked whether he was involved and he didn't respond. Okay, counsel, come on back.

\* \* \*

(Counsel approached the bench and the following ensued:)

[The Court]: Now

[Defense counsel]: I would object and make an exception and renew my motion for a mistrial, Your Honor, for the following reasons: I believe I heard the proffer not that my client[ ] refused to make any statements but that this Detective simply—

[The Court]: He wasn't asked.

[Defense counsel]:—did not remember any conversations taking place.

[The Court]: I may have overstated, but I think I overstated in the—

[Defense counsel]: And Your Honor, and I understand, and my final reason is, Your Honor, I think the fact that the State even went there in front of this jury is grounds for the mistrial.

[The Court]: I don't agree so overruled.

Kosh's defense was premised on the contention that, although he was present at the scene, he was not involved in the drug deals. The defense called Donnell K., Sharon Minor, and Glenda Watkins as witnesses. Minor and Watkins denied purchasing cocaine from Kosh or Donnell K., claiming instead that they bought the drugs in a nearby apartment building. Donnell K. testified that he was working alone that day and that he never worked with anyone else when selling drugs. Donnell K., Minor, and Watkins each testified that Kosh protested when the police arrested him and further that he denied knowing any of them.

Kosh was convicted of distribution of cocaine, possession of cocaine with intent to distribute, possession of cocaine with intent to distribute within 1,000 feet of a school,[3] and simple possession of cocaine. He was sentenced, after merger, to three concurrent sentences of ten years imprisonment without the possibility of parole.

On direct appeal, the Court of Special Appeals, in an unreported opinion, vacated two of the three ten year sentences (possession of cocaine with intent to distribute within 1,000 feet of a school and possession of cocaine with intent to distribute) and remanded for re-sentencing on those counts. The intermediate appellate court affirmed each of Kosh's convictions and the remaining ten-year sentence for distribution of cocaine. We granted Kosh's petition for a writ of certiorari, 379 Md. 225, 841 A.2d 339 (2004), in order to consider the following questions:

1.  Should the trial court have declared a mistrial where the State, in its case in chief, asked a detective, "Do you

---

**3.**  Detective Jones testified that the purported transactions occurred about 900 feet from Furman L. Templeton Elementary School.

recall if the Defendant ever denied his being involved in this case?" and the trial court then exacerbated the problem by informing the jury that the defendant had remained silent after his arrest, notwithstanding the detective's remark at the bench that the defendant may have denied his involvement?

2. Did the Court of Special Appeals err by holding that possession of cocaine with intent to distribute did not merge into distribution of cocaine where the jury was never instructed that the charge of possession of cocaine with intent to distribute related specifically to the quantity of cocaine that was seized from another person? [4]

## II.

Denial of a motion for a mistrial will be overturned on appeal when a trial judge has abused his or her discretion. *See Carter v. State*, 366 Md. 574, 589, 785 A.2d 348, 356 (2001). The determining factor as to whether a mistrial is necessary is whether "the prejudice to the defendant was so substantial that he was deprived of a fair trial." *Kosmas v. State*, 316 Md. 587, 594–95, 560 A.2d 1137, 1141 (1989). In assessing the prejudice to the defendant, the trial judge first determines whether the prejudice can be cured by instruction. *See Carter*, 366 Md. at 589–90, 785 A.2d at 356–57. Such an instruction must be "timely, accurate, and effective." *Id.* Unless the curative effect of the instruction ameliorates the prejudice to the defendant, the trial judge must grant the motion for a mistrial. *See Kosmas*, 316 Md. at 594, 560 A.2d at 1141.

## III.

The testimonial "fact" the trial judge recounted to the jury in his instruction was clearly erroneous. There was nothing in the record to support the trial judge's assertion

---

4. The conclusion we reach with respect to the first question makes it unnecessary for us to consider the second.

that Kosh remained silent or failed to deny his involvement. Detective Jones testified rather that he could not remember what, if anything, Kosh said. It was error for the judge to instruct the jury that Kosh had remained silent when even at that point there was no testimony to support such an instruction. Even if the trial judge's instruction were correct as a matter of fact, however, it was error nonetheless to tell the jury that Kosh kept silent. Evidence of a defendant's post-arrest silence is inadmissible as substantive evidence of his guilt.

In general, silence is evidence of dubious value that is usually inadmissible under either Maryland Rule 5–402 or 5–403.[5] *See Grier v. State,* 351 Md. 241, 252, 718 A.2d 211, 217 (1998) ("Evidence of a person's silence is generally inadmissible because in most circumstances silence is so ambiguous that it is of little probative force.") (citation omitted). A suspect's silence outside of police custody occasionally may be admissible as substantive evidence of guilt when it represents a tacit admission of wrongdoing. *Key–El v. State,* 349 Md. 811, 818–19, 709 A.2d 1305, 1308 (1998). *See also Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (The use of pre-arrest silence for impeachment purposes does not violate the U.S. Constitution.). A suspect's silence while in police custody, however, may not be used against him or her as substantive evidence of guilt.[6] *See Miller v. State,* 231 Md. 215, 218–19, 189 A.2d 635, 636 (1963).

---

**5.** Maryland Rule 5–402 provides:
> "Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible. Evidence that is not relevant is not admissible."

Maryland Rule 5–403 states:
> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**6.** The question of whether such evidence may be used for impeachment or for rebuttal is not presented in this case, and we do not address it.

Silence while in the custody of the police long has been treated differently under the Maryland law of evidence from silence during pre-arrest questioning. By the time the U.S. Supreme Court held in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), evidence of post-*Miranda* silence inadmissible for any purpose as a matter of federal constitutional law, it long had been settled as a matter of Maryland evidentiary law that evidence of post-arrest silence was inadmissible. In *Miller*, we reversed a conviction because the trial judge admitted testimony that the defendant failed to deny an accusation during a custodial interrogation. In doing so, we described the "tacit admission" rule and explained why it does not apply to a defendant in police custody.

It is generally held that if a statement is made by another person in the presence of a party to the action, be it civil or criminal, containing assertions of facts which, if untrue, the party would under all the circumstances naturally be expected to deny, his failure to speak is circumstantial evidence that he believes the statements to be true, and his conduct is thus receivable against him as an admission of such belief. *Ewell v. State,* [228 Md. 615, 618, 180 A.2d 857, 859 (1962) ]; [Further citations omitted].[7] But

'it may be stated as a general rule that statements made to or in the presence of a person, accusing him of the commission of or complicity in a crime, are, when not denied, admissible in evidence against him as warranting

---

The issue here is whether evidence of the defendant's silence may be presented as substantive evidence of guilt during the State's case-in-chief.

We note that the Court of Special Appeals has addressed the impeachment issue. "In view of the potential for unfair prejudice to the defendant and the likelihood that an arrestee's silence is motivated by a reason other than consciousness of guilt, we hold that it is error for the court to admit evidence of a criminal defendant's post-arrest, pre-*Miranda* warning, silence for impeachment purposes." *Wills v. State,* 82 Md.App. 669, 678, 573 A.2d 80, 85 (1990).

7. This description of the "tacit admission" rule is generally consistent with our most recent explanation of when pre-arrest silence may, or may not, be used against a criminal defendant. *See Key–El,* 349 Md. 811, 709 A.2d 1305.

an inference of the truth of the statements. But if the accused is held in custody under a criminal charge, mere silence should afford no inference whatever of acquiescence in statements of others made in his presence. He has the undoubted right to keep silence as to the crime with which he is charged, and is not called upon to reply to or contradict such statements.'

1 R.C.L.,[8] p. 479.

The so-called 'Massachusetts Rule' has been adopted in New York, where it was said:

'A person who is held in custody on a charge of crime, jointly with another person is not called upon to contradict statements prejudicial to him, made in his presence by the other person, in answer to inquiries made by an officer; and such statements, though not contradicted by him, are not admissible in evidence against him.'

*People v. Rutigliano*, [261 N.Y. 103, 106–107, 184 N.E. 689, 690 (1933)]. *See also Commonwealth v. McDermott*, [123 Mass. 440 (1877)]; *McCarthy v. United States*, [25 F.2d 298 (6th Cir.1928)]. And it has been held that the admission over objection of the accusation and the proof of the defendant's silence constitute reversible error. *Kern v. State*, [237 Ind. 144, 144 N.E.2d 705 (1957)].

231 Md. at 218–19, 189 A.2d at 636.

Nothing presented to us in the last forty years has moved us to change our understanding of how silence may, or may not, be used against a criminal defendant. In *Younie v. State*, 272 Md. 233, 322 A.2d 211 (1974), decided two years before the Supreme Court ruled in *Doyle* post-*Miranda* silence to be inadmissible, we reaffirmed that a defendant's custodial silence could not be used against him or her at his or her trial. In that case, Younie apparently waived his right to remain silent and agreed to answer some of the questions asked by the police during a custodial interrogation. At his trial, a

---

**8.** R.C.L. stands for "Ruling Case Law," which, according to most law librarians, was a predecessor to Am.Jur. and the ALRs.

transcript of the interrogation was read to the jury. In that transcript, the defendant was asked twenty-three questions. He answered fifteen of the questions, and refused to answer eight of them. 272 Md. at 236–38, 322 A.2d at 212–13. "[T]he State was permitted in closing argument to refer to these refusals to respond to some of the officer's questions." 272 Md. at 238, 322 A.2d at 214.

We reversed Younie's conviction after concluding that no reasonable inference could be drawn from Younie's refusal to answer certain questions, other than that he elected to exercise his constitutional right to remain silent. A jury mistakenly might consider his silence to be a "tacit admission" of the type described in *Miller,* but

> [u]nderlying this principle is the assumption that human nature is such that it spurs an innocent man to promptly deny false statements made in his presence. However, what is either ignored or overlooked in attempting to superimpose this rule upon silence which occurs during the course of custodial interrogation, is the Constitution which expressly permits the innocent and guilty alike to remain mute and not have this made known to the trier of facts. Silence in the context of a custodial inquisition is presumed to be an exercise of the privilege against self-incrimination from which no legal penalty can flow, and the State has the heavy burden of demonstrating by clear and convincing evidence that a failure to respond was not an invocation of this right. *Cf. Miller,* [231 Md. at 218, 189 A.2d at 636].

Turning now to the evidence in this case, all that is present in the record indicates that Younie was in fact relying upon his right to remain silent rather than waiving it when he failed to answer the police officer's interrogatories. 272 Md. at 244, 322 A.2d at 217. For this reason, evidence of his silence was very likely to be more prejudicial than probative and should not have been admitted.

In 1976, the Supreme Court changed the contours by which this issue is analyzed when it held that the use of post-*Miranda* silence as substantive evidence against a criminal

defendant violates the due process guarantees of the 5th Amendment to the U.S. Constitution made applicable to the States by the 14th Amendment. Once the government induces a defendant to remain silent by giving the *Miranda* advisements, the Supreme Court concluded, "it would be fundamentally unfair and a deprivation of due process" for the government to use the defendant's silence as evidence of guilt. *Doyle,* 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d 91. In *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Supreme Court held that the U.S. Constitution does not bar the use of post-arrest, pre-*Miranda* silence for impeachment purposes, and that the admissibility of such evidence was left to the various States' rules of evidence. Nevertheless, since *Doyle,* this issue usually has been discussed in constitutional terms.[9]

Thus, in *Grier,* when we reaffirmed the rule that post-*Miranda* silence is inadmissible, we focused on the constitutional question with only a brief mention of the evidentiary aspects of the issue:

> Evidence of post-arrest silence, after *Miranda* warnings are given, is inadmissible for any purpose, including impeachment. See *Doyle,* [426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d 91]; *Miranda,* [384 U.S. at 468 n. 37, 86 S.Ct. at 1624 n. 37, 16 L.Ed.2d 694]. As a constitutional matter, allowing such evidence "would be fundamentally unfair and

---

**9.** Judge Karwacki, addressing for the Court of Special Appeals the related issue of whether post-arrest, pre-*Miranda* silence may be used for impeachment, noted in *Wills* that:

> [T]he issue presented in the case *sub judice* may be decided either as a matter of state constitutional law or based on rules of evidence. But "nothing is better settled than the principle that courts should not decide constitutional issues unnecessarily," *State v. Raithel,* 285 Md. 478, 484, 404 A.2d 264 (1979). Mindful of this principle, as well as the Supreme Court's directive that this issue should be decided on the basis of each state's "own rules of evidence," *Fletcher,* 455 U.S. at 607, 102 S.Ct. at 1312, 71 L.Ed.2d at 494, we hold that evidence of an accused's post-arrest, pre-*Miranda* warning, silence for impeachment is inadmissible because the probative value, if any, of such evidence, is clearly outweighed by its potential for unfair prejudice. 82 Md.App. at 677, 573 A.2d at 84.

a deprivation of due process." *Doyle,* [426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d 91]. As an evidentiary matter, such evidence is also inadmissible. *Younie,* [272 Md. at 244, 322 A.2d at 217]; *Miller,* [231 Md. at 218–19, 189 A.2d at 636–37]. When a defendant is silent following *Miranda* warnings, he may be acting merely upon his right to remain silent. *Younie,* 272 Md. at 244, 322 A.2d at 217; *Miller,* 231 Md. at 218–19, 189 A.2d at 636–37. Thus, a defendant's silence at that point carries little or no probative value, and a significant potential for prejudice. *United States v. Hale,* 422 U.S. 171, 180, 95 S.Ct. 2133, 2138, 45 L.Ed.2d 99 (1975).

351 Md. at 258, 718 A.2d at 219–20. Perhaps this focus on the constitutional implications led us to explain in *Grier* that "[n]either the Supreme Court nor this Court has addressed the related question of whether the use of post-arrest, pre-*Miranda* silence is admissible as substantive evidence of guilt in the State's case-in-chief." 351 Md. at 259, 718 A.2d at 220. It is true that neither this Court nor the Supreme Court has opined on the constitutionality of the use of post-arrest, pre-*Miranda* silence as substantive evidence against a defendant. We see no reason, however, to read *Miller* and *Younie* to apply only to post-*Miranda* silence. To the extent that *Miller* and *Younie* resolve this question, this Court already has addressed the question of whether the use of post-arrest, pre-*Miranda* silence is admissible as substantive evidence of guilt. To the extent those cases do not answer the question, we now state it is not.

In neither *Miller* nor *Younie* did we make any distinction between post-arrest silence that precedes the giving of the *Miranda* warnings and post-*Miranda* silence. In *Miller* we could not have made such a distinction—that case preceded the Supreme Court's decision in *Miranda* by a little more than three years. Though some practitioners seem to have been taught otherwise over the years, there was already a rich jurisprudence related to the right to remain silent at the time the Supreme Court delivered its decision in *Miranda.* The constitutional prohibition against forced self-incrimination,

upon which *Miller* and *Younie* was based, preceded *Miranda* by almost two hundred years.

The Maryland Constitution, adopted in 1776, preserved a right against compelled self-incrimination. *See Blum v. State,* 94 Md. 375, 381, 51 A. 26, 28–29 (1902). That right has been present in one form or another in every version of the Maryland Constitution since that time. *Id.* Today it is found in Article 22 of the Maryland Declaration of Rights: "That no man ought to be compelled to give evidence against himself in a criminal case." The right to remain silent has been part of the U.S. Constitution for nearly as long, having been included in 1791 when the Bill of Rights was adopted. "[N]or shall [any person] be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Indeed, the right predates even these constitutional enactments; the maxim *nemo tenetur se ipsum accusare* is derived from the common law and appears in the *Magna Carta. Blum,* 94 Md. at 381, 51 A. at 28–29.

A full generation of lawyers has come before the Bar since *Miranda.* Few current practitioners may recall how the right against self-incrimination was interpreted before 1966. Nevertheless, that right already was a mainstay of the American criminal justice system. The *Miranda* "warn and proceed" formula for the admission of incriminating statements did not replace the previous law regarding that right, but instead marked an additional guarantee above and beyond those that already protected a suspect's right to remain silent. Were we to hold the opposite and distinguish between pre-*Miranda* and post-*Miranda* silence, the obvious implication would be that the right to remain silent only inures once a suspect has been advised. This obviously was not the intent of the Supreme Court when it decided *Miranda,* nor would it be consistent with the explicit recognition of the right against self-incrimination within the constitutions of Maryland and the United States. The *Miranda* advisement does not create the right. It serves merely to inform a suspect of a right he or she already possesses. *Miller* and *Younie* remain good law. A defendant's post-arrest silence may not be used as substantive

evidence of guilt.  It was an abuse of discretion for the trial judge to tell the jury that Kosh maintained silence.

The State argues in the alternative that Kosh was not prejudiced by the trial judge's error.  As explained *supra*, the judge's instruction to the jury both was clearly erroneous as to the imbedded testimonial fact (and reasonable inferences able to be drawn therefrom) and an abuse of discretion as to his choice of how to instruct the jury regarding the objection. "[W]e must reverse unless we are able to declare, beyond a reasonable doubt, that the error in no way influenced the verdict."  *Cole v. State*, 378 Md. 42, 69, 835 A.2d 600, 615 (2003).  The trial judge's improper instruction effectively impeached the defense witnesses before they took the stand. The trial judge instructed the jury that Kosh had kept silent. The defense witnesses testified that he vigorously denied his involvement.  The jury may well have taken the trial judge's instruction that Kosh remained silent as a settled fact, and therefore concluded that the defense witnesses were mistaken, at best.  The jury may have discounted the defense witnesses' testimony for that reason.  Although Detective Jones's other testimony, if believed, was strong evidence of Kosh's guilt, we cannot say, beyond a reasonable doubt, that the result of the trial would have been the same if the trial judge had not told the jury in his instruction that Kosh had said nothing.

JUDGMENT REVERSED.  CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.  COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.