MURPHY, C.J.
 

 In the Circuit Court for Baltimore City, a jury (Hon. Allen L. Schwait presiding) convicted appellant Derrick Gibson (Gibson) of first-degree murder, use of a handgun in the commission of a crime of violence,
 
 [1]
 
 and wearing, carrying or transporting a handgun.
 
 [2]
 
 The same jury convicted appellant Damon Cooley (Cooley) of second-degree murder and wearing, carrying, or transporting a handgun. We have reordered and slightly rephrased the four questions appellants present for our review. Those questions are:
 

 I. DID THE TRIAL COURT ERR IN ADMITTING A TAPE RECORDED STATEMENT MADE BY A WITNESS WHO REPUDIATED THAT STATEMENT AT TRIAL?
 

 
 *106
 
 II. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING COOLEY’S MOTION FOR MISTRIAL AFTER, IN THE PRESENCE OF THE JURY, SEVERAL SHERIFFS ESCORTED A STATE’S WITNESS FROM THE COURTROOM?
 

 III. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE DRUGS AND AMMUNITION SEIZED FROM THE HOME OF COOLEY’S GIRLFRIEND?
 

 IV. WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN APPELLANTS’ CONVICTIONS?
 

 For the reasons that follow, we answer “no” to each question and shall therefore affirm the judgments of the circuit court.
 

 Background
 

 On May 5, 2001, in the 700 block of Baker Street in Baltimore City, Anthony Williams, Jr. (Williams) was murdered. As a result of information provided by Eddie Terrell (Terrell), a friend of the victim, appellants were ultimately charged with that murder. On May 11, 2001, Terrell was arrested on an unrelated crime and questioned about the murder. At that point, he told detectives that he knew nothing about what happened to Williams. On May 21, however, he returned to the police station and gave a recorded statement that included the following assertions.
 

 About 4:00 p.m. on May 5, 2001, Terrell and Williams brought drugs to a location on Pennsylvania Avenue, where they had “junkies” sell the drugs for them. When the junkies ran out of the drugs supplied by Terrell and Williams, Cooley and four other males started selling drugs at that location. Williams told one of the people who had been selling drugs for him not to buy anything from Cooley and his companions.
 

 Terrell and Williams then left the scene, cut across a playground, walked down Baker Street, and made a left onto Windsor Avenue. As they were walking down Windsor, a white Crown Victoria pulled around the corner. Cooley was driving that vehicle. Gibson got out of the passenger side of
 
 *107
 
 the car and asked Williams if Williams had “a lot of big words.” At this point, Gibson started shooting. Terrell turned, ran down an alley, and hid in an old refrigerator until the shooting stopped. He then returned to the location of the shooting and saw Williams’ body on the ground.
 

 At trial, Terrell denied having any knowledge of the shooting. He testified that he did not witness the crime, that his May 21st statement was a lie, that the information he gave the police on that day was based only on information he had received from people in the neighborhood, that he implicated appellants because he believed that he was going to be charged with the shooting, and that no one had warned him that the appellants would kill him if he told the truth about what happened to Williams.
 

 Because Terrell’s trial testimony was inconsistent with his May 21st statement, the State introduced that statement into evidence. The State also introduced evidence that drugs and ammunition of the same caliber as those recovered from the victim were found during a search of the home of Cooley’s girlfriend.
 

 Discussion
 

 I
 

 Appellants interposed “confrontation” and “hearsay within hearsay” objections to the introduction of Terrell’s recorded inconsistent statement. In one portion of that statement, Terrell described what he had witnessed. That portion, which was admitted pursuant to the “catchall” exception to the rule against hearsay, was clearly admissible under Rule 5-802.1(a)(3).
 
 [3]
 
 In another portion of Terrell’s statement, he reported that he had received information that appellants said
 
 *108
 
 they would kill him if he cooperated with the officers investigating Williams’ murder. That portion of the statement was admissible to explain why Terrell had initially denied knowing what happened to Williams.
 

 The “confrontation” objection presents the question of whether any of Terrell’s prior recorded statement was admissible. We hold that, when a witness testifies at trial that the defendant did not commit the crime, the Confrontation Clause does not prohibit the jury from convicting the defendant on the basis of the witness’ prior written and/or recorded statement in which the witness stated that the defendant did commit the crime. This holding is consistent with
 
 Nance v. State,
 
 331 Md. 549, 629 A.2d 633 (1993), and with Md. Rule 5-802.1(a)(3), which codified the holding in
 
 Nance.
 
 We also hold that the recent decision of
 
 Crawford v. Washington,
 
 541 U.S. -, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) has no effect upon the admissibility of Terrell’s out-of-court statement, because
 
 Crawford
 
 did not overrule the unbroken line of cases holding that the Confrontation Clause does not operate to exclude pretrial statements made by a witness who actually testifies at trial.
 
 [4]
 

 
 *109
 
 In
 
 California v. Green,
 
 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the United States Supreme Court held that “the Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.”
 
 Id.
 
 at 164, 90 S.Ct. 1930. That is precisely what occurred in the case at bar.
 

 The
 
 Green
 
 Court was not presented with the issue of whether the Confrontation Clause would operate to exclude the prior statements “of a witness who disclaims all present knowledge of the ultimate event.”
 
 Id.
 
 at 169, 90 S.Ct. 1930. That precise issue was decided in
 
 United States v. Owens,
 
 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), in which a majority of the Supreme Court held “that neither the Confrontation Clause nor Federal Rule of Evidence 802 is violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification.”
 
 Id.
 
 at 564, 108 S.Ct. 838. Writing for the majority in
 
 Owens,
 
 Justice Scalia expressly relied upon
 
 Delaware v. Fensterer,
 
 474 U.S. 15, 21, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985), a per curiam opinion in which a majority of the Court held that the Confrontation Clause does not require exclusion of expert opinion testimony that the hair of a murder victim had been “forcibly” removed, even though the expert also testified that (1) there are three methods of determining whether a hair has been removed by force, and (2) he could not remember which method he used in that case.
 
 Owens,
 
 484 U.S. at 558-60, 108 S.Ct. 838 (citing
 
 Fensterer,
 
 474 U.S. at 19-22, 106 S.Ct. 292). The
 
 Fensterer
 
 Court stated:
 

 The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving
 
 *110
 
 testimony that is marred by forgetfulness, confusion, or evasion.
 

 The Court has recognized that “the cross-examiner is not only permitted to delve into the witness’ story to test the witness’ perceptions and memory, but [also] ... allowed to impeach,
 
 i.e.,
 
 discredit, the witness.”
 
 Davis,
 
 415 U.S., at 316, 94 S.Ct., at 1110. But it does not follow that the right to cross-examine is denied by the State whenever the witness’ lapse of memory impedes one method of discrediting him. Quite obviously, an expert witness who cannot recall the basis for his opinion invites the jury to find that his opinion is as unreliable as his memory.
 

 This conclusion is confirmed by the fact that the assurances of reliability our cases have found in the right of cross-examination are fully satisfied in cases such as this one, notwithstanding the witness’ inability to recall the basis for his opinion: the factfinder can observe the witness’ demean- or under cross-examination, and the witness is testifying under oath and in the presence of the accused.
 

 This Court held that “the Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories.”
 

 To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfin
 
 *111
 
 der the reasons for giving scant weight to the witness’ testimony.
 

 474 U.S. at 19-23, 106 S.Ct. at 294-96 (some citations omitted).
 

 Crawford v. Washington, supra,
 
 which involved the testimonial hearsay statement made by a declarant who was unavailable to testify at trial, is in no way inconsistent with
 
 Owens, Fensterer, Green, Nance,
 
 Md. Rule 5-802.1, or Md. Rule 5-616(e). We therefore hold that the Confrontation Clause does not require the exclusion of any out-of-court statement made by a person who actually testifies at trial and is therefore subject to cross-examination concerning the statement.
 

 Appellants’ objections also present the question of whether Judge Schwait erred by admitting that portion of Terrell’s statement in which he said that his cousin told him that someone in the community had said that Gibson and Cooley were going to kill Terrell if he told the police what happened. It is clear that this portion of the statement was not admissible to prove the fact that Gibson and Cooley had actually threatened Terrell. It is also clear, however, that appellants (1) were not entitled to the precise relief that they requested, and (2) did not request the precise relief to which they were entitled.
 

 The portion of Terrell’s statement in which he referred to the threats that had come to his attention was admissible because “evidence of threats to a witness or fear on the part of a witness, in order to explain an inconsistency, is admissible in criminal cases for credibility rehabilitation purposes.... ”
 
 Washington v. State,
 
 293 Md. 465, 470, 445 A.2d 684 (1982) (citations omitted);
 
 see also Brown v. State,
 
 80 Md.App. 187, 194-95, 560 A.2d 605 (1989). Appellants were entitled to a limiting instruction that would have restricted the evidence of threats to the purpose for which it was admissible, but they were not entitled to a ruling that excluded this evidence altogether.
 

 
 *112
 
 II.
 

 Cooley argues that he was unfairly prejudiced when the jury saw sheriffs escort Terrell from the courtroom after Terrell completed his testimony.
 
 [5]
 
 The record shows that, on the day after Terrell testified, Cooley’s trial counsel stated:
 

 [O]n tape, Mr. Terrell told the police officers that he was scared. It was brought to my attention after the jury left yesterday that there were several sheriffs from the Baltimore City Sheriffs Office that were in the courtroom who then left the courtroom with Mr. Terrell.
 

 Your Honor, that would leave an impression on the jury that Mr. Terrell is under some kind of guard because of the information that was elicited on tape by the Baltimore City Police Department on May the 21st.
 

 Mr. Terrell never testified yesterday that he was scared. He said that he lied when he said those statements to the police. I was not aware that the sheriffs were going to come into the courtroom and I was not aware that the sheriff would have been escorting the witness out of the presence of the jury....
 

 The prosecutor responded:
 

 Quite frankly, I didn’t see the extent of the entourage or whatever she’s claiming escorting Mr. Terrell out, so I don’t know how many sheriffs we’re talking about here.
 

 Quite frankly, I don’t think that, that is not prejudicial. While on the stand, it came out that he was scared and he received threats.
 

 Furthermore, I can proffer to this Court while Mr. Terrell and his grandmother were sitting outside, people—and I can’t say for sure who they were—approached him about testifying in this case. So obviously there was a reason for him to have some protection.
 

 
 *113
 
 In denying appellant’s motion for mistrial, Judge Schwait stated:
 

 I didn’t ask for extra sheriffs to come in during that testimony. They believed it was in the best interest of the security of the courtroom for them to come in. That’s in their discretion. They certainly know what this case is about. And if they believed that we needed extra personnel here, I’m not going to second guess that.
 

 In addition to which, there are facts in this case that would indicate that there is some need for security in this kind of situation and I’m not, as [I] said, going to second guess how much security and when it comes in. (Emphasis added).
 

 A trial judge has broad discretion in maintaining the security of the courtroom.
 
 Whittlesey v. State,
 
 340 Md. 30, 84, 665 A.2d 223 (1995),
 
 cert. denied,
 
 516 U.S. 1148, 116 S.Ct. 1021, 134 L.Ed.2d 100 (1996). That broad discretion, however, must be exercised by a judicial officer rather than by a law enforcement officer.
 
 [6]
 
 In
 
 Bowers v. State,
 
 306 Md. 120, 507 A.2d 1072,
 
 cert. denied,
 
 479 U.S. 890, 107 S.Ct. 292, 93 L.Ed.2d 265 (1986), the Court of Appeals quoted with approval the following analysis found in
 
 United States v. Samuel,
 
 431 F.2d 610, 615,
 
 final decision entered,
 
 433 F.2d 663 (4th Cir.1970),
 
 cert. denied,
 
 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971):
 

 “It is [the trial judge] who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes.... As a discretionary matter, the district judge’s decision with regard to measure[s] for security is subject to a limited review to determine if it was abused. We stress
 
 *114
 
 that the discretion is that of the district judge. He may not ... delegate that discretion to the Marshal.”
 

 306 Md. at 133, 507 A.2d 1072 (citations omitted).
 

 There are situations in which the trial judge must “second guess” a “courtroom security” decision that would result in unfair prejudice to the accused. No such situation, however, occurred in the case at bar. The record shows that, on the afternoon
 
 before
 
 Cooley’s counsel moved for a mistrial, (1) Terrell was the last witness to testify that day, (2) all counsel of record were present in the courtroom when Terrell was “excused,” (3) the jurors were not “excused” until after all counsel returned to the trial tables following an on-the-record bench conference, and (4) neither defense counsel complained about whatever occurred as Terrell left the courtroom.
 

 We are persuaded that if appellants had been unfairly prejudiced by something that occurred when Terrell left the courtroom, Cooley’s motion for mistrial would have been made immediately after the allegedly prejudicial incident occurred. We are also persuaded that there is evidentiary significance in the fact that Gibson’s trial counsel did not join in the motion.
 

 In
 
 In re Devon T.,
 
 85 Md.App. 674, 584 A.2d 1287 (1991), while rejecting the respondent’s contention that the evidence was insufficient to prove that he knew the difference between right and wrong, this Court held that an “exchange” between the respondent and his lawyer (during which the lawyer explained the respondent’s privilege against self-incrimination) (1) permitted the inference that the lawyer believed that the respondent “understood the significance of criminality and incrimination,” and (2) “[ujnder the classic case ... of
 
 Wright v. Tatham,
 
 5 Cl. & Fin. 670, 1838 WL 3779 (1838), this belief on the part of a close observer is relevant evidence for the proposition that the thing believed is true.”
 
 Id.
 
 at 696-97, 584 A.2d 1287. That analysis is equally applicable to the case at bar, in which the decision of Gibson’s trial counsel to refrain from joining in Cooley’s motion constituted an implied assertion by Gibson’s trial counsel that appellants were not unfairly
 
 *115
 
 prejudiced by whatever occurred when Terrell left the courtroom.
 

 In the final analysis, even assuming that more reasonable security measures should have been taken,
 
 [7]
 
 the dispositive question is whether the security measures that were taken created the danger of unfair prejudice to the defendants.
 
 See Hunt v. State,
 
 321 Md. 387, 408, 583 A.2d 218 (1990);
 
 see also Bruce v. State,
 
 318 Md. 706, 721, 569 A.2d 1254 (1990). Judge Schwait did not err in finding that appellants were not unfairly prejudiced by what occurred when Terrell left the courtroom. Moreover, had Judge Schwait declared a mistrial, Gibson would then have been in a position to argue that, because there was no “manifest necessity” to declare a mistrial in his case,
 
 [8]
 
 the charges against him must be dismissed on double jeopardy grounds. Under these circumstances, Cooley was not entitled to a mistrial.
 

 Ill
 

 Appellants argue that Judge Schwait erred in admitting irrelevant and unfairly prejudicial evidence of drugs and
 
 *116
 
 ammunition found in the home of Cooley’s girlfriend, Zakia Jones. According to appellants, there was insufficient evidence to establish that Cooley and Jones were residing together at 2001 McCullough Street when that residence was searched. We disagree.
 

 The State’s case included testimony that, when the search warrant was executed about 6:20 a.m. on July 20, 2001, both Jones and Cooley were present, along with their child. Cooley was sleeping when the police arrived. Both Cooley and Jones were in the bedroom at the time the bullet cartridges were recovered. In addition, paperwork in the names of both Jones and Cooley was recovered from the premises. This evidence was sufficient to establish that Cooley and Jones were residing together at 2001 McCullough Street when the search warrant was executed.
 

 Appellants also argue that the probative value of the seized evidence was substantially outweighed by the danger of unfair prejudice. We disagree with that argument as well. It is well settled that,
 

 [w]ith respect to issues involving the admissibility of evidence, although relevant evidence is generally admissible,
 
 Merzbacher v. State,
 
 346 Md. 391, 404, 697 A.2d 432 (1997), it “should be excluded by the trial court, if the probative value of such evidence is determined to be substantially outweighed by the danger of unfair prejudice.”
 
 Andrews v. State,
 
 372 Md. 1, 19, 811 A.2d 282 (2002) (citing Maryland Rule 5-403). “ ‘[A] decision to admit relevant evidence over an objection that the evidence is unfairly prejudicial will not be reversed absent an abuse of discretion.’ ”
 
 Merzbacher,
 
 346 Md. at 405, 697 A.2d 432 (quoting
 
 Williams v. State,
 
 342 Md. 724, 737, 679 A.2d 1106 (1996),
 
 overruled on other grounds, Wengert v. State,
 
 364 Md. 76, 89, 771 A.2d 389 (2001)).
 

 Carter v. State,
 
 374 Md. 693, 706, 824 A.2d 123 (2003);
 
 see also Smith v. State,
 
 299 Md. 158, 179, 472 A.2d 988 (1984) (citing
 
 Poole v. State,
 
 295 Md. 167, 180, 453 A.2d 1218 (1983)). As the ammunition recovered from the home was identical to the
 
 *117
 
 caliber of the bullet recovered from the victim’s body, and the seized evidence therefore corroborated Terrell’s recorded statement, we hold that Judge Schwait did not err or abuse his discretion in admitting the evidence at issue.
 

 IV
 

 We review a “sufficiency of the evidence” argument to determine “whether after viewing the evidence in the light most favorable to the prosecution
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Bloodsworth v. State,
 
 307 Md. 164, 167, 512 A.2d 1056 (1986) (citing
 
 Jackson v. Virginia,
 
 443 U.S. 307, 313, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Cooley argues that the evidence was insufficient to support his conviction for second-degree murder and wearing, carrying, or transporting a handgun. In support of that argument, he emphasizes that the only evidence linking him to the murder was Terrell’s statement that, when Terrell saw Gibson get out of the Crown Victoria, Cooley was in the driver’s seat. There is no merit in that argument. Evidence that Cooley transported the shooter to the murder scene, and drove the shooter away after the shooting, was sufficient to establish that Cooley participated in the murder.
 
 [9]
 

 Both appellants argue that the evidence was insufficient to sustain their convictions because the testimony was simply too inconsistent to be believed. This argument presents yet another situation in which “the so-called
 
 Kucharczyk
 
 doctrine [based upon
 
 Kucharczyk v. State,
 
 235 Md. 334, 201 A.2d 683 (1964) ] ... has been invoked in vain.”
 
 Bailey v.
 
 
 *118
 

 State,
 
 16 Md.App. 88, 94-95, 294 A.2d 123 (1972). In
 
 Bailey,
 
 Judge Moylan stated that
 

 our system of jurisprudence places reliance in the fact finder to take contradictions or equivocations properly into account and then to make informed judgment in assessing a witness’s credibility and in weighing that witness’s testimony-
 

 Id.
 
 at 97, 294 A.2d 123. That statement is applicable to the case at bar, in which it was for the jury to resolve testimonial inconsistencies. It is well established that the testimony of a single eyewitness, if believed by the jury, is sufficient to prove criminal agency.
 
 Branch v. State,
 
 305 Md. 177, 184, 502 A.2d 496 (1986). The jurors could reasonably infer that appellants decided to attack Williams because he had invaded their drug territory.
 

 JUDGMENTS AFFIRMED; EACH APPELLANT TO PAY 50% OF THE COSTS.
 

 [1]
 

 . Formerly codified at MdCode art. 27, § 36B(d) (1957, 1996 Repl. Vol.); now codified at Md Code, Crim § 4-204 (2002).
 

 [2]
 

 . Formerly codified at MdCode art. 27, § 36B(b) (1957, 1996 Repl. Vol.); now codified at Md Code, Crim § 4-203 (2002).
 

 [3]
 

 . In its 125th Report to the Court of Appeals, the Rules Committee recommended that the Court adopt a proposed version Rule 5-802.1, which would have provided that, when a witness testifies at a trial and “is subject to cross-examination’’ on that occasion, the rule against hearsay does not operate to exclude “[a] statement that is inconsistent with the declarant’s testimony, if the statement was given subject to the penalty of perjury at a trial, deposition, or other proceeding at which there was opportunity for cross-examination.” The records of the
 
 *108
 
 Rules Committee show that on October 29, 1993, the Honorable Alan M. Wilner (then Chief Judge of the Court of Special Appeals and Chair of the Rules Committee) presented to the Court of Appeals a memorandum in which he noted that "the Rule regarding prior inconsistent statements needs to be modified in light of
 
 Nance v. State,
 
 331 Md. 549, 629 A.2d 633 (1993)," and recommended the amendments that were adopted by the Court of Appeals on December 15, 1993. The current version of Maryland Rule 5-802.1 took effect on July 1, 1994, and, in pertinent part, provides:
 

 The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule: (a) A statement that is inconsistent with the declarant’s testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement.
 

 [4]
 

 . In
 
 Crawford,
 
 the United States Supreme Court held that the criminal defendant's right of confrontation was violated when the prosecution
 
 *109
 
 introduced a testimonial hearsay statement made by the defendant’s wife, who did not testify at trial.
 

 [5]
 

 . This argument pertains only to Cooley, as counsel for Gibson never joined in the motion for mistrial.
 
 See Osburn v. State,
 
 301 Md. 250, 253, 482 A.2d 905 (1974) (holding that where only one defendant objects, the other defendant has not preserved the issue for appellate review).
 

 [6]
 

 . An abuse of discretion is present “where no reasonable person would take the view adopted by the [trial] court.”
 
 Metheny v. State,
 
 359 Md. 576, 604, 755 A.2d 1088 (2000) (quoting
 
 In re Adoption/Gnardianship
 
 No. 3598, 347 Md. 295, 312, 701 A.2d 110 (1997)). "Thus, where a trial court's ruling is reasonable, even if we believe it might have gone the other way, we will not disturb it on appeal."
 
 Fontaine v. State,
 
 134 Md.App. 275, 288, 759 A.2d 1136 (2000).
 

 [7]
 

 . "[Ilf the means of justice are to be preserved and the ends of justice protected, courts must exercise their discretion so as to dispel any belief that intimidation of victims or witnesses will serve the ends to which the intimidation is directed.”
 
 Commonwealth v. Penn,
 
 386 Pa.Super. 133, 562 A.2d 833, 837 (1989). "Judges should use their judicial authority to protect victims and witnesses from harassment, threats, intimidation, and harm.”
 
 State v. Bush,
 
 148 Ariz. 325, 714 P.2d 818, 823 (1986) (quoting National Institute of Justice, Statement of Recommended Judicial Practices 11 (1983)). "The influence of lawless force directed toward parties or witnesses to proceedings during their pendency is so sinister and undermining of the process of adjudication itself that no court should regard it with indifference or shelter it from exposure and inquiry.”
 
 NLRB v. Indiana & Michigan Electric Co.,
 
 318 U.S. 9, 29, 63 S.Ct. 394, 87 L.Ed. 579 (1943).
 

 [8]
 

 . "The most significant guideline for the exercise of the trial judge’s discretion is that a mistrial is to be declared only where it is 'manifestly necessary,' or 'under urgent circumstances,' or ‘only in very extraordinary and striking circumstances,' and declaring a mistrial is not ‘to be lightly undertaken.' "
 
 Cornish v. State,
 
 272 Md. 312, 318, 322 A.2d 880 (1974) (citations omitted).
 

 [9]
 

 . “An accomplice is one who knowingly, voluntarily, and with common interest with the principal offender, participates in the commission of a crime either as a principal or as an accessory before the fact.”
 
 Woods v. State,
 
 315 Md. 591, 615 n. 10, 556 A.2d 236 (1989) (citing
 
 Watson v. State,
 
 208 Md. 210, 217, 117 A.2d 549 (1955)).
 
 “A
 
 second degree principal must be either actually or constructively present at the commission of a criminal offense and aid, counsel, command, or encourage the principal in the first degree in the commission of that offense.”
 
 State v. Raines,
 
 326 Md. 582, 593, 606 A.2d 265 (1992).