867 A.2d 1065

**Damon COOLEY**

v.

**STATE of Maryland.**

**No. 69, Sept. Term, 2004.**

Court of Appeals of Maryland.

Feb. 10, 2005.

Stacy W. McCormack, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for petitioner.

Devy Patterson Russell, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J. RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

On March 7, 2002, Damon Cooley, petitioner, was convicted by a jury in the Circuit Court for Baltimore City of second degree murder and wearing, carrying, or transporting a handgun,[1] in connection with the May 5, 2001, murder of Anthony Williams, Jr. The same jury convicted fellow defendant, Derrick Gibson, who is not a party to this appeal, of first degree murder, use of a handgun in the commission of a crime of violence,[2] and wearing, carrying, or transporting a handgun. On June 10, 2002, petitioner was sentenced to a term of thirty years imprisonment for second degree murder and a consecutive three-year term for the handgun offense. Mr. Gibson, as well as petitioner, whose motion for a mistrial had been denied, appealed their convictions to the Court of Special Appeals on June 14, 2002, and, in a published opinion, that court affirmed the judgments of the trial court. *Cooley v. State*, 157 Md.App. 101, 849 A.2d 1026 (2004). Petitioner thereafter filed a Petition for Writ of Certiorari to this Court. On September 15, 2004, we granted the petition.[3] *Cooley v. State*, 383 Md. 211, 857 A.2d 1129 (2004).

Petitioner seeks review of the following question:

---

1. *See* Md.Code (2002), § 4–203 of the Criminal Law Article. This section was formerly codified at Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 36B (b).

2. *See* Md.Code (2002), § 4–204 of the Criminal Law Article. This section was formerly codified at Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 36B (d).

3. This Court denied Mr. Gibson's separate Petition for a Writ of Certiorari. *Cooley v. State*, 157 Md.App. 101, 849 A.2d 1026 (2004),

"When addressing the merits of a motion for a mistrial made during a joint trial of two defendants, can an appellate court place any 'evidentiary significance' on the fact that the attorney for one of the co-defendants did not join in the motion?"

We hold that, under the circumstances of this case, the Court of Special Appeals erred in attaching "evidentiary significance" to the actions or inactions of a co-defendant's counsel. The failure of a co-defendant's counsel to join a motion for mistrial cannot be considered an implied assertion as to the lack of prejudice to a moving defendant. There is no evidentiary significance to what a co-defendant's counsel does or fails to do in respect to a decision on the merits of a trial court's holding on a mistrial motion filed by the other co-defendant.

Final determinations of what measures constitute appropriate courtroom security are decisions that rest entirely in the discretion of the trial judge and such ultimate decisions normally may not be delegated or abrogated to law enforcement officers.

## I. Facts

There is general agreement as to the facts of this case. Accordingly, we adopt in large part the facts as set forth in the Court of Special Appeals' opinion, which states:

"On May 5, 2001, in the 700 block of Baker Street in Baltimore City, Anthony Williams, Jr. (Williams) was murdered. As a result of information provided by Eddie Terrell (Terrell), a friend of the victim, [Gibson and Cooley] were ultimately charged with that murder. On May 11, 2001, Terrell was arrested on an unrelated crime and questioned about the murder. At that point, he told detectives that he knew nothing about what happened to Williams. On May 21, however, he returned to the police station and gave a recorded statement that included the following assertions.

*cert. denied sub. nom., Gibson v. State,* 383 Md. 212, 857 A.2d 1130 (2004).

"About 4:00 p.m. on May 5, 2001, Terrell and Williams brought drugs to a location on Pennsylvania Avenue, where they had 'junkies' sell the drugs for them. When the junkies ran out of the drugs supplied by Terrell and Williams, Cooley and four other males started selling drugs at that location. Williams told one of the people who had been selling drugs for him not to buy anything from Cooley and his companions.

"Terrell and Williams then left the scene, cut across a playground, walked down Baker Street, and made a left onto Windsor Avenue. As they were walking down Windsor, a white Crown Victoria pulled around the corner. Cooley was driving that vehicle. Gibson got out of the passenger side of the car and asked Williams if Williams had 'a lot of big words.' At this point, Gibson started shooting. Terrell turned, ran down an alley, and hid in an old refrigerator until the shooting stopped. He then returned to the location of the shooting and saw Williams' body on the ground."

*Cooley,* 157 Md.App. at 106–07, 849 A.2d at 1029–30 (alteration added).

The State moved to join the trial of the two defendants. Represented by separate counsel, petitioner and Mr. Gibson each filed pre-trial motions to be tried separately as to each offense and apart from any other defendants. The defendants' motions were denied, and accordingly, petitioner and Mr. Gibson, over their objections, were tried as co-defendants in a multi-day trial beginning March 4, 2002. Mr. Terrell testified at the trial as a State witness.

"At trial, Terrell denied having any knowledge of the shooting. He testified that he did not witness the crime, that his May 21st statement was a lie, that the information he gave the police on that day was based only on information he had received from people in the neighborhood, that he implicated [Gibson and Cooley] because he believed that he was going to be charged with the shooting, and that no one had warned him that [ ] [Gibson and Cooley] would kill him if he told the truth about what happened to Williams.

"Because Terrell's trial testimony was inconsistent with his May 21st statement, the State introduced that statement into evidence. The State also introduced evidence that drugs and ammunition of the same caliber as those recovered from the victim were found during a search of the home of Cooley's girlfriend."

*Cooley,* 157 Md.App. at 106–07, 849 A.2d at 1029–30 (alterations added).

Following the conclusion of his testimony, Mr. Terrell was excused. The prosecutor and both defense attorneys were participating in an on-the-record bench conference pertaining to trial scheduling when Mr. Terrell, the day's last witness, exited the courtroom. As Mr. Terrell left the courtroom, it was later alleged that he was accompanied in his departure by several sheriff's officers, an occurrence not specifically observed by petitioner's attorney. However, sometime after the jury had been excused for that day, it was brought to that counsel's attention.

Petitioner's counsel moved for a mistrial at the commencement of the next day's proceedings based on the belief that Mr. Terrell's alleged departure in the company of sheriff's officers might impact the jury. Mr. Gibson's counsel did not join this motion. Petitioner's counsel argued in support of his motion for mistrial:

"[O]n tape, Mr. Terrell told the police officers that he was scared. It was brought to my attention after the jury left yesterday that there were several sheriffs from the Baltimore City Sheriff's Office that were in the courtroom who then left the courtroom with Mr. Terrell.

"Your Honor, that would leave an impression on the jury that Mr. Terrell is under some kind of guard because of the information that was elicited on tape by the Baltimore City Police Department on May the 21st.

"Mr. Terrell never testified yesterday that he was scared. He said that he lied when he said those statements to the police. I was not aware that the sheriffs were going to come into the courtroom and I was not aware that the

sheriff would have been escorting the witness out of the presence of the jury [after he left the witness stand]."
*Cooley,* 157 Md.App. at 112, 849 A.2d at 1033 (alteration restores original). In response, the prosecutor argued:

"Quite frankly, I didn't see the extent of the entourage or whatever she's claiming escorting Mr. Terrell out, so I don't know how many sheriffs we're talking about here.

"Quite frankly, I don't think that, that is not prejudicial. While on the stand, it came out that he was scared and he received threats.

"Furthermore, I can proffer to this Court while Mr. Terrell and his grandmother were sitting outside, people— and I can't say for sure who they were—approached him about testifying in this case. So obviously there was a reason for him to have some protection."

*Id.*

The trial judge denied the motion for mistrial, stating:

"Well, let me say that I don't control the Sheriff's Office. Security is in the province of the Sheriff's Office."

As indicated in the Court of Special Appeal's decision, the trial judge continued:

"I didn't ask for extra sheriffs to come in during that testimony. They believed it was in the best interest of the security of the courtroom for them to come in. That's in their discretion. They certainly know what this case is about. And if they believed that we needed extra personnel here, I'm not going to second guess that.

"In addition to which, there are facts in this case that would indicate that there is some need for security in this kind of situation and I'm not, as [I] said, going to second guess how much security and when it comes in. [Motion for a mistrial on that basis is denied.]"

*Id.* at 113, 849 A.2d at 1033 (bolding omitted) (some alteration original).

On appeal, the intermediate appellate court affirmed the defendants' convictions as well as the denial of the motion for

mistrial based in part on its determination, *inter alia*, that Mr. Gibson's counsel's failure to join in the motion for mistrial constituted an "implied assertion" and was evidence that no unfair prejudice arising from the jury's observation of the sheriffs escorting Mr. Terrell from the courtroom occurred.

## II. Standard of Review

A mistrial is no ordinary remedy and "[a] request for a mistrial in a criminal case is addressed to the sound discretion of the trial court and the exercise of its discretion, in a case involving a question of prejudice which might infringe upon the right of the defendant to a fair trial, is reviewable on appeal to determine whether or not there has been an abuse of that discretion by the trial court in denying the mistrial." *Wilhelm v. State*, 272 Md. 404, 429, 326 A.2d 707, 723 (1974). We have stated that "the declaration of a mistrial is an extraordinary act which should only be granted if necessary to serve the ends of justice." *Jones v. State*, 310 Md. 569, 587, 530 A.2d 743, 752 (1987), *vacated on other grounds*, 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988).

The possible prejudice that a defendant may suffer as a result of alleged misconduct forms the threshold for the decision whether to grant a mistrial. "The determining factor as to whether a mistrial is necessary is whether 'the prejudice to the defendant was so substantial that he was deprived of a fair trial.'" *Kosh v. State*, 382 Md. 218, 226, 854 A.2d 1259, 1264 (2004) (quoting *Kosmas v. State*, 316 Md. 587, 595, 560 A.2d 1137, 1141 (1989)). The trial judge must evaluate the circumstances of the case and "[i]n assessing the prejudice to the defendant, the trial judge first determines whether the prejudice can be cured by instruction." *Kosh*, 382 Md. at 226, 854 A.2d at 1264. *See Carter v. State*, 366 Md. 574, 589–90, 785 A.2d 348, 356–57 (2001). If such a curative instruction is given, it must be "timely, accurate, and effective." *Carter*, 366 Md. at 589, 785 A.2d at 356. "Unless the curative effect of the instruction ameliorates the prejudice to the defendant, the trial judge must grant the motion for a mistrial." *Kosh*, 382 Md. at 226, 854 A.2d at 1264. *See Kosmas*, 316 Md. at 594,

560 A.2d at 1141. Many years ago, in evaluating the possible prejudicial effect of the admission of specific evidence in a particular case, this Court stated:

"Generally, the choice of measures to protect the fair, unprejudiced, working of its proceedings is left to the discretion of the trial court, and only in exceptional cases will its choice be reviewed in this court. In the greater number of instances the injection into a trial of matter other than that involved in the issue to be decided is cured by withdrawal of it and an instruction to the jury to disregard it, but there may, of course, be instances in which it would not be cured in this way, and terminating the trial and taking the case up afresh before another jury would be the only adequate means of correction. Those instances are exceptional, but they do arise."

*Nelson v. Seiler,* 154 Md. 63, 72, 139 A. 564, 567 (1927).

As we have indicated, a trial judge is afforded considerable discretion in deciding a motion for mistrial, and "in a case involving a question of prejudice which might infringe upon the right of the defendant to a fair trial, [that decision] is reviewable on appeal to determine whether or not there has been an abuse of that discretion by the trial court in denying the mistrial." *Wilhelm,* 272 Md. at 429, 326 A.2d at 723 (alteration added). *See also Tierco Maryland, Inc. v. Williams,* 381 Md. 378, 428, 849 A.2d 504, 535 (2004). In discussing the possible prejudice to a plaintiff arising from the jury's receipt of and consideration of information concerning the case from a source outside the record in *Wernsing v. General Motors Corp.,* 298 Md. 406, 470 A.2d 802 (1984), Judge Rodowsky, writing for the Court, stated:

"Where, as here, the precise extraneous matter is known but direct evidence as to its effect on deliberations is not permitted, a sound balance is struck by a rule which looks to the probability of prejudice from the face of the extraneous matter in relation to the circumstances of the particular case. It is the function of the trial judge when ruling on a motion for a new trial to evaluate the degree of probable

prejudice and whether it justifies a new trial. That judgment will not be disturbed but for an abuse of discretion." *Id.* at 419–20, 470 A.2d at 809. In *Wilhelm, supra,* a case in which we addressed the possible prejudicial effect of a prosecutor's comments made to the jury during opening remarks, we amalgamated from a series of federal cases several factors to be considered in assessing unfair prejudice to the defendant. We stated:

> " 'The applicable test for prejudice is whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error.' "

*Wilhelm,* 272 Md. at 416, 326 A.2d at 716 (citations omitted). *See also Walker v. State,* 373 Md. 360, 399, 818 A.2d 1078, 1100 (2003).

■■■■ We have also discussed the discretion afforded a trial judge in determining a motion for a new trial (and a new trial may result if a motion for mistrial is granted). "The question whether to grant a new trial is within the discretion of the trial court. Ordinarily, a trial court's order denying a motion for a new trial will be reviewed on appeal if it is claimed that the trial court abused its discretion." *Mack v. State,* 300 Md. 583, 600, 479 A.2d 1344, 1352 (1984). We have expressed that this discretion afforded a trial judge is "broad but it is not boundless." *Nelson v. State,* 315 Md. 62, 70, 553 A.2d 667, 671 (1989). In *Jenkins v. State,* 375 Md. 284, 295–96, 825 A.2d 1008, 1015 (2003), we declared, "The abuse of discretion standard requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law." *Id.* at 295–96, 825 A.2d at 1015. *See Nelson,* 315 Md. at 70, 553 A.2d at 671; *Ricks v. State,* 312 Md. 11, 31, 537 A.2d 612 (1988). As

this Court explained in *Wilhelm*, 272 Md. at 413, 326 A.2d at 714–15, "The conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an abuse of discretion by the trial judge of a character likely to have injured the complaining party."

## III. Discussion

In affirming the trial court's denial of the motion for mistrial, the Court of Special Appeals explained:

> "We are persuaded that if appellants had been unfairly prejudiced by something that occurred when Terrell left the courtroom, Cooley's motion for mistrial would have been made immediately after the allegedly prejudicial incident occurred.[4] *We are also persuaded that there is evidentiary significance in the fact that Gibson's trial counsel did not join in the motion.*"

*Cooley*, 157 Md.App. at 114, 849 A.2d at 1034 (emphasis added) (footnote added). Petitioner maintains that the Court of Special Appeals abused its discretion in failing to consider the merits of the trial court's denial of the motion for mistrial, as requested by petitioner's appeal, relying instead, at least in part, on the failure of Gibson's counsel to join the motion for mistrial as indicative that no unfair prejudice occurred.

Petitioner contends that the Court of Special Appeals' decision leads to the conclusion that the actions or inactions (through counsel) of one co-defendant can affect the outcome for another co-defendant who seeks a decision on the merits of a motion for mistrial. According to petitioner, the intermediate appellate court's holding not only places an obligation on a co-defendant to enter an objection or join a motion for preservation purposes, but also enables a co-defendant's failure either to join in a motion or make an objection to limit the effect of a proper objection entered by another defendant.

---

4. The record permits a conclusion that the motion for mistrial was promptly made, *i.e.*, at an early opportunity after the alleged grounds were made known to counsel.

The State counters that, "[r]ead in its proper context, the court's opinion explained that, had Cooley and Gibson truly believed themselves that they were 'unfairly prejudiced by something that occurred when Terrell left the courtroom,' almost certainly, either counsel for Cooley would have immediately moved for mistrial or counsel for Gibson would have joined in the motion."

The trial judge focused on the propriety of the additional security present in the courtroom as his reason for denying the motion for mistrial, and he withheld comment both as to the motion's timing and Mr. Gibson's non-joinder. The Court of Special Appeals, however, having been persuaded that there was insight to be gleaned both from the overnight delay in petitioner's making his motion for mistrial and from Mr. Gibson's failure to join that motion, applied a perfunctory label that Mr. Gibson's having failed to join that motion was an "implied assertion" that the courtroom security incident did not unfairly prejudice the defendants.

In response to the intermediate appellate court's "implied assertion" characterization of co-defendant's restraint, petitioner remarks "that when two or more criminal defendants are tried together but represented by separate counsel, trial strategies are bound to differ."[5] Petitioner goes on to note:

"There are a number of possible reasons why the trial attorney for Gibson in this case did not join in petitioner's motion for mistrial regarding the increased security measures taken by the sheriff's department. While it is possible that Gibson's attorney did not believe that the defendants were unfairly prejudiced by what occurred, it is also possible that Gibson's attorney did not join in the motion because he was simply ineffective and not paying attention, or that he believed that he did not have to join in the motion to preserve the issue for appellate review. It is also quite possible that Gibson's attorney made a strategic decision not

5. Both petitioner and his co-defendant filed pre-trial motions to sever the trial. Thus, it is not very plausible that the two co-defendants, at least initially, intended their trial strategies to work in concert.

to join in the motion based on a belief that he thought the trial was going well and did not want the trial court to declare a mistrial as to his client."

Petitioner correctly concludes that an "implied assertion" is an incorrect characterization of Mr. Gibson's non-participation in the mistrial motion. In fact, Mr. Gibson's non-action is simply that—a failure to act. No motive or evidentiary weight as to a defendant should be derived from what a co-defendant's counsel did or did not do at trial in respect to a motion for mistrial filed solely by the defendant. This is especially so when the co-defendants have objected to being tried together.

In attempting to narrow the issues presented,[6] the Court of Special Appeals concluded that "the dispositive question is whether the security measures that were taken *created the danger of unfair prejudice to the defendants.*" *Cooley,* 157 Md.App. at 115, 849 A.2d at 1034 (emphasis added). Whereas the trial judge in denying the mistrial motion limited his comments to his approval of additional sheriff's officers in the courtroom and did not derive any conclusion from Mr. Gibson's failure to take issue with the officers' presence, the Court of Special Appeals improperly amplified the trial court's assessment and overstepped its appellate role. In finding "evidentiary significance" as to prejudice to a defendant in a co-defendant's non-joinder in the motion for mistrial, which was prompted by defendant's perception of the potential effect on the jury of the supplemental security measures, and by labeling such reticence on the part of a co-defendant as an

---

**6.** Petitioner and Mr. Gibson presented four questions for review to the Court of Special Appeals:

"I.    Did the trial court err in admitting a tape recorded statement made by a witness who repudiated that statement at trial?

II.    Did the trial court abuse its discretion in denying Cooley's motion for mistrial after, in the presence of the jury, several sheriffs escorted a State's witness from the courtroom?

III. Did the trial court err in admitting into evidence drugs and ammunition seized from the home of Cooley's girlfriend?

IV. Was the evidence insufficient to sustain appellants' convictions?"

The Court of Special Appeals answered these four questions in the negative. *Cooley,* 157 Md.App. at 105–06, 849 A.2d at 1029.

"implied assertion," the intermediate appellate court inappropriately used the inaction of one defendant against the other and injected a presumption against petitioner as to prejudice to which the State was not entitled. In general, as to motions for mistrial, the silence, argument, action or inaction of one co-defendant, in respect to a lack of prejudice, does not constitute evidence against another co-defendant *via* an "implied assertion" or any other characterization of the non-actor co-defendant's conduct.

## A. Implied Assertion

The Court of Special Appeals examined the case of *In re Devon T.*, 85 Md.App. 674, 584 A.2d 1287 (1991), and found its proposition, that a lawyer's belief, based on conversations with, explanations to, and the acknowledgments of his juvenile client, that his client "understood the significance of criminality and incrimination" was sufficient to overcome the presumption of incapacity due to infancy, analogous to the situation presented by the instant appeal. *Id.* at 697, 584 A.2d at 1298 (quoting *Wright v. Tatham*, 5 Cl. & Fin. 670 (1838)). That is, the *Devon T.* court determined that the "belief on the part of a close observer is relevant evidence for the proposition that the thing believed is true." *Id.* at 697, 584 A.2d at 1298. Applying *Devon T.'s* proposition, the intermediate appellate court stated, in respect to the case *sub judice*, that "the decision of Gibson's trial counsel to refrain from joining in Cooley's motion constituted an *implied assertion* by Gibson's trial counsel that appellants were not unfairly prejudiced by whatever occurred when Terrell left the courtroom." *Cooley*, 157 Md.App. at 114–15, 849 A.2d at 1034 (emphasis added). Petitioner disputes that *In re Devon T.* has bearing on "what evidentiary significance, if any, can be placed on the failure of a co-defendant's attorney to join in another co-defendant's motion for mistrial." We agree with petitioner.

Implied assertions arise most frequently in qualitative determinations regarding hearsay evidence offered at trial. A Court of Special Appeals case offers a commentary:

"The text of Rule 5–801 is substantively the same as Federal Rule 801(a)-(c). Under the federal rule, courts have taken divergent positions as to when, if ever, an implied assertion is an assertion within the meaning of Rule 801(a)(1). LYNN MCLAIN, MARYLAND RULES OF EVIDENCE 214–217 (1994 ed.). There are three basic approaches under federal decisions: 1) That 'no implied assertions from statements are hearsay' (*id.* at 214[, 111 Md.App. 436, 681 A.2d 1181]); 2) that 'implied assertions from verbal statements are hearsay' *(id.* at 215[, 111 Md. App. 436, 681 A.2d 1181]); and 3) that implied assertions are hearsay unless 'there is no possibility that the declarant intended to leave a particular impression' (*id., quoting Park v. Huff,* 493 F.2d 923, 927 (5th Cir.1974), *withdrawn on other grounds,* 506 F.2d 849 (en banc), *cert. denied,* 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975)). The committee note to Maryland Rule 5–801 states that the fact that evidence 'is in the form of a question or something other than a narrative statement ... does not necessarily preclude its being an assertion.' Based on the committee note, it would appear that the drafters of Maryland Rule 5–801 rejected the view that implied assertions are never hearsay. At common law, Maryland recognized implied assertions as hearsay. *See Waters v. Waters,* 35 Md. 531, 544–45 (1872); *Eiland v. State,* 92 Md.App. 56, 81–82, 607 A.2d 42 (1992); *rev'd on other grounds, sub nom. Tyler v. State,* 330 Md. 261, 623 A.2d 648 (1993); *Eades v. State,* 75 Md.App. 411, 426–27, 541 A.2d 1001, *cert. denied,* 313 Md. 611, 547 A.2d 188 (1988)."

*Carlton v. State,* 111 Md.App. 436, 442–43, 681 A.2d 1181, 1184 (1996). Apparently, the Court of Special Appeals, in finding meaning in words not spoken by Mr. Gibson's counsel, extrapolated the hearsay concept of "implied assertion" to derive non-existent meaning from Mr. Gibson's failure to join the motion for mistrial. Even assuming *arguendo* that Mr. Gibson's non-joinder did constitute an "implied assertion," such that it were analogous to the hearsay genre, we have not found anything in our case law, or in the case law of our sister states, to support using one co-defendant's failure to join in a

motion for mistrial in an evidentiary fashion on the issue of prejudice against another co-defendant.[7]

■ We do not agree with the Court of Special Appeals' characterization of Mr. Gibson's non-participation in a motion made by his co-defendant in response to the sheriff's officers allegedly having escorted Mr. Terrell from the courtroom while the jury remained seated, as evidentiarily significant indicating a lack of prejudice.

■ We vacate the Court of Special Appeals' decision because of its conclusion that Mr. Gibson's silence as to petition-

---

7. There is support for the proposition that a defendant who chooses not to join a co-defendant's motion cannot himself later appeal on such procedural grounds. That is not the situation of the case *sub judice.* *See, e.g., Grandison v. State,* 341 Md. 175, 224, 670 A.2d 398, 421 (1995) (finding that in order "to preserve a claim of trial error for purposes of appellate review, an objection to the claimed error must have been made at trial"); *Osburn v. State,* 301 Md. 250, 253, 482 A.2d 905, 906 (1984) (holding that where defendant had failed to object to a contention that the State asserted in its closing argument to the jury, defendant had not preserved that issue for review); *see also Ezenwa v. State,* 82 Md.App. 489, 514, 572 A.2d 1101, 1113 (1990) (having failed to object in the trial court, the appellant was not permitted to raise the issue on appeal); *see generally State v. Gould,* 241 Conn. 1, 9 n. 3, 695 A.2d 1022, 1029 n. 3 (1997) (citing *State v. Walton,* 227 Conn. 32, 55 n. 20, 630 A.2d 990, 1003 n. 20 (1993), and observing that it is *not* the case "whenever a codefendant makes a trial motion in which the defendant did not join, the silent defendant may raise the denial of the motion in his appeal. When a defendant does not join a codefendant's motion for tactical or other reasons, the defendant cannot later complain of the procedure on appeal" (internal citation omitted)).

As to evidence generally, an objection must be made when the evidence is offered, or the objection is deemed waived. *See* Md. Rule 4–323(a). If a party is unable to object to a ruling or an order, however, the objection may still be available, as provided by Md. Rule 4–323(c), which states:

"(c) *Objections to other rulings or orders.* For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection."

er's motion for mistrial has evidentiary significance and constituted an implied assertion. There is neither evidence nor precedence for the conclusion reached by the intermediate appellate court. As it based its finding, at least in part, on an improper factor, we vacate its judgment and remand the case to that court for further remand to the circuit court for a proper consideration of the issues.

## B. Courtroom Security

The issue of courtroom security proved the linchpin for the trial judge's denying the motion for mistrial. Immediately prior to denying the motion, the trial judge stated:

"I didn't ask for extra sheriffs to come in during that testimony. They believed it was in the best interest of the security of the courtroom for them to come in. *That's in their discretion.* They certainly know what this case is about. And if they believed that we needed extra personnel here, I'm not going to second guess that." [Emphasis added.]

The Court of Special Appeals, in affirming the trial court, also invoked courtroom security, but its approval apparently overlooked the possible improper origin of the enhanced security, which the trial court judge had indicated when he pronounced, in prefacing his denial of petitioner's motion for mistrial, "Well, let me say that I don't control the Sheriff's Office. Security is in the province of the Sheriff's Office." The intermediate appellate court, however, correctly appraised courtroom security as follows:

"A trial judge has broad discretion in maintaining the security of the courtroom. *Whittlesey v. State,* 340 Md. 30, 84, 665 A.2d 223 (1995), *cert. denied,* 516 U.S. 1148, 116 S.Ct. 1021, 134 L.Ed.2d 100 (1996). That broad discretion, however, must be exercised by a judicial officer rather than by a law enforcement officer. In *Bowers v. State,* 306 Md. 120, 507 A.2d 1072, *cert. denied,* 479 U.S. 890, 107 S.Ct. 292, 93 L.Ed.2d 265 (1986), the Court of Appeals quoted with approval the following analysis found in *United States v. Samuel,* 431 F.2d 610, 615, *final decision entered,* 433 F.2d

663 (4th Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971):

> "It is [the trial judge] who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes.... As a discretionary matter, the district judge's decision with regard to measure[s] for security is subject to a limited review to determine if it was abused. We stress that the discretion is that of the district judge. He may not ... delegate that discretion to the Marshal."

306 Md. at 133, 507 A.2d 1072 (citations omitted).

*Cooley,* 157 Md.App. at 113–14, 849 A.2d at 1033–34 (alterations in original) (footnote omitted).

Petitioner maintains that the trial judge abused his discretion in abrogating his authority to determine security in his courtroom to the sheriff's office. The State asserts generally that, in certain cases such as the present, judges must exercise their discretion in protecting parties, victims and witnesses. The trial judge in the instant case, however, overtly declared that it was the sheriff's officers' call for enhanced security that he declined to "second guess." Accordingly, the trial judge *may have* abdicated his responsibility as to the issue of courtroom security.

▮▮▮ As indicated, *supra,* courtroom security ultimately remains the province of the trial court. *See also Lovell v. State,* 347 Md. 623, 638, 702 A.2d 261, 269 (1997) (noting the trial court's discretion in determining courtroom security but disapproving of the trial court's decision in that case not to allow the defendant to appear without shackles at his sentencing); *Whittlesey, supra; Hunt v. State,* 321 Md. 387, 411, 583 A.2d 218, 229 (1990) (citing to *United States v. Samuel,* 431 F.2d 610, 615 (4th Cir.1970) for the proposition that "while the trial judge has broad discretion for courtroom security, he or she may not delegate that discretion to a third party"). The intermediate appellate court's distillation of this case to "whether the security measures that were taken created the

danger of unfair prejudice to the defendants," *Cooley*, 157 Md.App. at 115, 849 A.2d at 1034, did not sufficiently determine the issue as to the trial court's comments regarding security. It may be that the trial court misspoke when stating that "Security is in the province of the Sheriff's Office." We reiterate that courtroom security is an ultimate determination that rests entirely and solely in the discretion of the trial judge and such determinations should not be abrogated to law enforcement officers.

Because the trial judge in this case *may have* abrogated his authority to designate the extent of his courtroom security and because the intermediate appellate court failed to address fully this abrogation issue, we shall also vacate its ruling on that issue. We do not construe the appropriateness of the enhanced security in the courtroom, because as we have stated, that ultimate determination rests first with the trial judge.

## IV. Conclusion

Mr. Gibson's failure to join petitioner's motion for mistrial is not an implied assertion by Mr. Gibson that there was no unfair prejudice occasioned by the jury's possible observation of several sheriff's officers escorting Mr. Terrell, a State witness, from the courtroom following the conclusion of his testimony. Such silence or non-participation of a co-defendant in respect to a mistrial motion is not evidence against the defendant via an implied assertion.[8]

Ultimate determinations as to courtroom security remain with the trial court. Decisions as to the need for enhanced or additional security measures must be rooted in the trial court's assessments and such decisions may not be completely

---

8. We express no opinion whether, if in fact the witness was escorted from the courtroom by sheriff's officers, such action, under the circumstances of this case, would have constituted some type of misconduct; nor do we express any opinion as to whether, if it was misconduct, it was prejudicial under the circumstances of this particular case. We simply opine to the intermediate appellate court that it cannot do what it did—in the way that it did.

delegated to law enforcement officers. Accordingly, we remand this case to the Court of Special Appeals for that court to remand the case to the circuit court without affirmance or reversal for further proceedings consistent with this opinion.[9]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT WITHOUT AFFIRMANCE OR REVERSAL FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

---

9.  We were advised at oral argument that there may exist a video tape of the relevant proceeding. Because it was not in the record before us we could not address it. No motion to supplement the record was made prior to oral argument before this court.